1998-NMCA-028

954 P.2d 102

## SIESTA HILLS NEIGHBORHOOD AS-SOCIATION, a New Mexico Non–Profit Corporation, Petitioner–Appellant,

v.

## CITY OF ALBUQUERQUE, a New Mexico Municipal Corporation; A New Day, Inc., a New Mexico Non–Profit Corporation; and Jeff Burrows, d/b/a New Day Shelters, Respondents–Appellees.

No. 17617.

Court of Appeals of New Mexico.

Jan. 21, 1998.

Nicholas F. Persampieri, Santa Fe, for Appellant.

Robert M. White, City Attorney, David Suffling, Assistant City Attorney, Albuquerque, for Appellee, City of Albuquerque.

John A. Myers, Myers, Oliver & Price, P.C., Albuquerque, for Appellees, A New Day, Inc. and Jeff Burrows, d/b/a New Day Shelters.

## OPINION

DONNELLY, Judge:

1. Siesta Hills Neighborhood Association (Siesta Hills) appeals a decision by the Albuquerque City Council (City Council) approving annexation and special use zoning for property on which New Day Shelters (New Day) sought to build a short-term youth shelter. Siesta Hills contends on appeal that (1) special use zoning for the proposed shelter property is illegal; (2) technical and procedural errors in the zoning approval process render the approval invalid; and (3) the asserted bias of a member of the City Council prevented Siesta Hills from receiving a fair and impartial hearing by the City Council. We affirm the City Council's decision.

### FACTS

2. In July 1991 New Day, a New Mexico non-profit corporation, acquired a ten-acre parcel of land (the Property) from the United States Government. The Property was transferred pursuant to the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §§ 11301 to 11472 (1987) (the Act). The Act permits organizations or entities that serve the homeless to utilize surplus federal land to assist them in carrying out their purposes. The deed required that the Property be used continuously for thirty years in accordance with the proposed service program of the grantee and that use of the Property for the purposes specified begin within thirty-six months from the date of the deed. During the pendency of this litigation, New Day has secured successive one-year extensions of these conditions subsequent in order to avoid forfeiture of the Property.

3. New Day's proposed shelter targets non-delinquent, non-adjudicated youth having

no substance abuse problems and children who are sometimes involved in dysfunctional families and therefore cannot be at home. The children cared for by New Day are, generally, runaways, abused, neglected, or sometimes homeless for other reasons. The goal of the proposed shelter is the same as for New Day's other youth programs: family reunification. The projected average stay at the proposed shelter to be built on the Property is nine and one-half days. The New Mexico Legislature appropriated funds in 1991 and in 1992 to assist New Day in developing the Property and building the proposed youth shelter. The $450,000 allocation has been reappropriated each year that New Day's construction plans have been delayed.

4. At the request of the New Mexico General Services Department, New Day sought local zoning for the Property. On June 4, 1993, the Bernalillo County Planning Commission rejected New Day's special use zoning request, in part because of neighborhood opposition and because some commissioners felt that airport noise might make the site unsuitable for the proposed use. New Day then petitioned the City of Albuquerque to annex the tract and to establish special use zoning for the Property. On December 15, 1994, the Albuquerque Environmental Planning Commission (EPC) recommended approval by the City Council of New Day's petitions pursuant to several conditions, including incorporation of certain noise mitigation measures. Following the action of the EPC, Siesta Hills appealed to the City Council.

5. The City Council made New Day's petitions for annexation and special use zoning the subject of Bill No. 0–130 and referred the matter to the City Council's Land Use, Planning, and Zoning Committee. The Planning and Zoning Committee recommended both annexation and approval of the proposed special use. Thereafter, the City Council voted to approve the bill on November 6, 1995. The bill was signed by the Mayor of the City of Albuquerque on November 15, 1995, and was filed with the city clerk on November 17, 1995. Siesta Hills appealed the decision of the City Council to the district court. Following a hearing, the district court entered

an order denying the appeal on June 26, 1996.

## DISCUSSION

### Standard of Review

6. Judicial review of a decision of a zoning authority is limited to questions of law. *Downtown Neighborhoods Ass'n v. City of Albuquerque,* 109 N.M. 186, 189, 783 P.2d 962, 965 (Ct.App.1989). An appellate court conducts the same review as the district court, which is simply to determine whether the zoning authority's decision is illegal in whole or in part. *Id.* Appellate review of actions taken by a governing body, such as the City Council, is undertaken with deference and those decisions are disturbed only if the court is not satisfied that the action was authorized by law or if it is not supported by substantial evidence. *Id.* Zoning actions are quasi-judicial in nature and a reviewing court applies an administrative standard of review. *West Old Town Neighborhood Ass'n v. City of Albuquerque,* 1996–NMCA–107, ¶ 11, 122 N.M. 495, 927 P.2d 529. On appeal, although conflicting evidence is not completely disregarded, the evidence is reviewed in the light most favorable to the administrative body, *see San Pedro Mining Corp. v.. Board of County Comm'rs,* 1996–NMCA–002, ¶ 27, 121 N.M. 194, 909 P.2d 754 (decided in 1995), and the reviewing court may not substitute its judgment for that of the administrative body. *See Coe v. City of Albuquerque,* 76 N.M. 771, 774, 418 P.2d 545, 547 (1966).

### I. Special Zoning Use

7. Siesta Hills asserts that the special use zoning approved by the City Council for the Property was illegal under City of Albuquerque, New Mexico, *Comprehensive Zoning Code* Sections 14–16–2–22(B) and 14–16–1–3(B) (hereinafter Albuquerque Zoning Code). Section 14–16–2–22(B) lists twenty-seven separate "Special Uses" for which SU–1 zoning may be approved, and Section 14–16–1–3(B) provides that "[a]ny use not designated a permissive or conditional use in a zone is specifically prohibited from that zone. . . ." New Day and the City of Albuquerque (the City) justify SU–1 zoning for the Property on the grounds that,

under Section 14–16–2–22(B), the proposed youth shelter is either a "[p]lanned development area" authorized by subsection 19 if "special use, height, area, setback, or other regulations [are] imposed," or it is a "[u]se combination[ ] not adequately allowed and controlled in other zones" as permitted by subsection 27. We need not consider whether the zoning action comes within the purview of a "[p]lanned development area" because we conclude that the City Council could properly determine that the proposed shelter involves "[u]se combinations not adequately allowed and controlled in other zones." We find *Burroughs v. Board of County Comm'rs*, 88 N.M. 303, 540 P.2d 233 (1975), relied upon by Siesta Hills, unpersuasive under the circumstances presented here because that case did not involve consideration of Section 14–16–2–22(B)(27) or any similar Albuquerque Zoning Code provision authorizing "[u]se combinations not adequately allowed or controlled in other zones."

8. Siesta Hills also argues that the short-term youth shelter is an "emergency shelter" that could be "allowed and controlled" under Section 14–6–2–22(B) in any one of six specified zones under the Albuquerque Zoning Code. Section 14–16–1–5(B) of the Albuquerque Zoning Code defines an "emergency shelter" as: "A facility which provides sleeping accommodations to six or more persons for a period not normally exceeding 30 consecutive days, with no charge or a charge substantially less than market value; it may provide means and social services...." Siesta Hills points out that the Albuquerque Zoning Code specifically authorizes emergency shelters as a permissive use in the M–1 Light Manufacturing Zone and M–2 Heavy Manufacturing Zone, and as a conditional use in the R–2 Residential Zone, the R–3 Residential Zone, the C–2 Community Commercial Zone, and the C–3 Heavy Commercial Zone. *See* Albuquerque Zoning Code §§ 14–16–2–20(A)(7); 14–16–2–21(A)(1); 14–16–2–11(B)(6); 14–16–2–12(B)(1); 14–16–2–17(B)(8); 14–16–2–18(B)(1). Prior to its annexation by the City of Albuquerque, the Property was zoned A–1 Rural Agriculture Zone by the Bernalillo County Planning Commission.

9. In response to this argument, New Day and the City argue that the proposed use of the Property is more than just an emergency shelter because it provides a broader range of assistance to the children it serves. After a hearing, the EPC made a specific finding that the Property "is appropriate for the temporary residential/lodging *and classroom uses*" planned for the youth shelter. (Emphasis added.) Moreover, at the EPC hearing, there was testimony that most of New Day's existing facilities are "20 feet away from other houses" such that the ten-acre Property represented a "huge opportunity" for New Day. The site development plan submitted to the EPC indicated that New Day planned to use this opportunity to provide designated areas for outdoor recreation for the youth at the shelter, in addition to sleeping and eating quarters. The plan also included space for administrative offices for New Day. Additionally, there was testimony at the January 10, 1996, Planning and Zoning Committee hearing that New Day planned to leave seven and one-half acres of the ten-acre site in its native state as an open space use. The City Council had all of this information before it when it approved special use zoning for the Property. Because there is substantial evidence of a number of proposed uses for the Property that are not adequately allowed in combination by an "Emergency Shelter" designation, we conclude that the City Council's action approving the special use was not violative of the Albuquerque Zoning Code.

■ 10. Siesta Hills also complains that special use zoning of the Property approved by the City Council deprives it of the protection of the City's emergency shelter regulations, which prohibit the location of emergency shelters within 1500 feet of each other. *See* Albuquerque Zoning Code § 14–16–3–13(A)(6). The record, however, fails to indicate that New Day or any other entity has operated, or has sought City approval to establish, an emergency shelter within 1500 feet of the youth facility proposed by New Day. Thus, no basis for this claim is reflected in the record. *See Sanchez v. City of Santa Fe*, 82 N.M. 322, 324, 481 P.2d 401, 403 (1971) (an issue must be ripe in order to constitute

an "actual controversy" subject to judicial determination).

## II. *Annexation Procedure*

11. Siesta Hills also contends that the existence of six procedural defects in the zoning approval process effectively invalidates the City Council's annexation and approval of special use zoning for the Property. First, Siesta Hills points out that implementation of SU–1 zoning requires the City to "designate the specific use permitted." Albuquerque Zoning Code § 14–16–2–22(A)(2). In Bill 0–130, the City Council designated the specific use for the Property as a "Short Term Shelter." Siesta Hills argues that since "Short Term Shelter" is not one of the special uses specifically listed in Section 14–16–2–22(B) for which SU–1 zoning may be approved, the City Council's approval of SU–1 for the Property is invalid. We think this argument must fail, however, because, based on the record before it, the City Council could properly find that New Day's short-term youth shelter in this case comes within the ambit of Section 14–16–2–22(B)(27), which authorizes adoption of "[u]se combinations not adequately allowed and controlled in other zones...." In addition, as will be more particularly explained below, the City approved New Day's proposal with myriad conditions, thereby providing the sort of control that is not possible in other zones.

12. Second, Siesta Hills asserts that the City erred in not making any findings of fact or conclusions of law in its approval of SU–1 zoning for the Property. Siesta Hills is correct that "[a]pplication for zoning of an area to be annexed to the city is an application for a map amendment and must be filed and processed concurrently with the annexation action." Albuquerque Zoning Code § 14–16–4–1(A)(6). The Albuquerque Zoning Code provides that "[i]n making a decision, the key findings of fact shall be stated." Section 14–16–4–1(C)(9). Section 14–16–4–1(C)(9), however, does not specify which city body shall state the key findings of fact in a zoning determination. In this case, the EPC made specific findings of fact in its decision recommending approval of New Day's application for SU–1 zoning for the Property, and

Siesta Hills does not dispute that the conditions imposed by the EPC decision apply to the Property. Additionally, the Planning and Zoning Committee and the full City Council had these findings of fact before them when they followed the EPC's recommendation and approved the zoning proposal and annexation. Although we agree that in such cases the preferable practice would be for the City Council to itself adopt findings of fact and conclusions of law, we conclude that the Albuquerque Zoning Code requirement that findings be entered was substantially complied with in this case. *Cf. West Old Town Neighborhood Ass'n,* 1996–NMCA–107, ¶ 21 (reviewing issue of whether record of proceedings indicated substantial compliance with city requirements).

13. Siesta Hills' third assertion of procedural error is that the City erred by indirectly granting approval of New Day's site development plan by way of its approval of the EPC decision. We agree that, under the ordinance, applications for SU–1 zoning must include a site development plan, *see* Section 14–16–2–22(A)(1), and that approval of a site development plan must be made for an entire lot, not only for the structures on the lot. *Texas Nat'l Theatres, Inc. v. City of Albuquerque,* 97 N.M. 282, 286, 639 P.2d 569, 573 (1982). We think, however, that Siesta Hills mischaracterizes the EPC decision. It does not purport to approve New Day's site development plan for the proposed shelter. Rather, the EPC decision made a specific finding that "changes are required to the site development plan." As a condition for approval of New Day's petitions for annexation and special use zoning, the EPC decision specifically directed that "[t]he applicant shall provide a complete site development plan set containing all building elevations and site lighting and a landscape plan prior to final sign-off." Neither New Day nor the City contests that until there is "final sign-off" on the site design, construction of the youth shelter may not proceed.

14. Fourth, Siesta Hills, in marshalling its points of alleged procedural error, argues that the City cannot properly grant a special use permit unless a complete site design has been submitted. In further-

ance of this argument, it asserts that the City Council erred in approving special use zoning for the ten-acre Property when the site development plan submitted to the EPC covered only two and one-half acres of the lot, and that the Albuquerque Zoning Code provides that the appropriateness of granting a special use permit for a use a specific location "is partly or entirely dependent on the character of the site design." Section 14–16–2–22. The provisions of Section 14–16–2–22, however, clearly state that approval of special use zoning is only "partly" dependent on the site design. Hence, we find this argument unpersuasive.

**15.** As a fifth assertion of procedural error, Siesta Hills contends that the City's decision approving special use zoning was invalid because it is contrary to Federal Aviation Administration (FAA) regulations and the City's AP–2 airport overlay zone, thereby allegedly creating a land use/noise conflict in violation of the Albuquerque/Bernalillo County Comprehensive Plan (Comprehensive Plan or Plan). We do not believe the FAA provisions or the overlay zone relied upon by Siesta Hills, under the facts existing here, militate against the City's action. The EPC adopted, in part, the following findings:

2. The site is appropriate for the temporary residential/lodging and classroom uses that occur in Short Term Shelters. This use is an acceptable transitional use between the military airport uses to the south and the residential uses to the north. This proposed zoning is also compatible with the health care uses to the west.

3. The residents of the Siesta Hills Neighborhood Association have provided testimony that while noise pollution from the Airport is a factor in their neighborhood such noise pollution has not negatively affected the stability or the marketability of the residential properties.

4. The City of Albuquerque Aviation Department has provided information from the FAA Regulations 49.CFR part 150 study that indicates that transient lodgings may be compatible in areas with outdoor noise levels be-

tween 65 and 70 decibles [sic] since normal residential construction techniques result in a noise reduce of 20 dbs.

Moreover, there was also undisputed testimony at the EPC hearing that the City has "not seen it fit to adopt the AP overlay zones and so the [P]roperty ... would not be impacted by those zoning requirements in the event that this [P]roperty were annexed." In approving special use zoning for the Property, the City Council rejected Siesta Hills' argument regarding the existence of a land use/noise conflict in violation of the Comprehensive Plan. Thus, we find this argument without merit.

**16.** Lastly, Siesta Hills asserts that the EPC decision impermissibly delegated to its planning staff unbridled discretion to determine appropriate noise mitigation measures. Although any delegation of authority by a local governing body to its staff must be capable of reasonable application, and sufficiently limit and define discretionary powers, *Texas Nat'l Theatres, Inc.*, 97 N.M. at 286, 639 P.2d at 573, here, it is clear that there was no abuse of discretion. Rather, the staff was restricted to considering construction methods for, or the possible relocation of, the proposed shelter in order to mitigate potential noise impacts. As pointed out by EPC member Robert Stephenson at the January 10, 1996, Planning and Zoning Committee hearing on Siesta Hills' appeal: "That is the kind of thing that the EPC routinely delegates to the City staff, because they can determine whether or not the buildings are soundproof...." Based on the record, we find no impermissible delegation in this case.

### III. *Alleged Bias of City Council Member*

**17.** Siesta Hills additionally argues that it did not receive a fair and impartial hearing during the annexation and zoning process because of the asserted bias of a member of the Planning and Zoning Committee. It contends that Councilor Robbins, who served on the Planning and Zoning Committee, was biased or prejudiced. In support of this argument, it asserts that at the October 11, 1995, hearing on New Day's

petition for annexation and special use zoning, Councilor Robbins stated that the issue was "real cut-and-dried" for her and that she would "always vote in favor of youth issues." Siesta Hills argues that these statements indicate that Councilor Robbins had "prejudged and did not have an open mind on the issues." Siesta Hills also asserts that because one of Councilor Robbins' children attended a seven-week program run by New Day around January 1994, Councilor Robbins' participation in the zoning approval decision created an appearance of impropriety requiring this Court to vacate the City's zoning approval for the New Day site.

18. Siesta Hills contends that a public officer sitting in a quasi-judicial capacity is normally disqualified " 'if an objective observer would entertain reasonable questions about the judge's impartiality.' " *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 40, 888 P.2d 475, 486 (Ct.App. 1994) (quoting *Liteky v. United States,* 510 U.S. 540, 564, 114 S.Ct. 1147, 1162, 127 L.Ed.2d 474 (1994) (Kennedy, J., concurring)); *see also Reid v. New Mexico Bd. of Exam'rs in Optometry,* 92 N.M. 414, 416, 589 P.2d 198, 200 (1979) (in reviewing claims of prejudice, court must also consider the appearance of prejudice).

19. Based on our review of the law and of the record in this case, we do not believe the matters relied upon by Siesta Hills required disqualification of Councilor Robbins under the circumstances existing here. Siesta Hills has presented no evidence that Councilor Robbins prejudged the merits of New Day's petition for annexation and special use zoning; rather, the record is clear that she made her statements after having heard Siesta Hills' arguments. *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces,* 1997–NMCA– 031, ¶ 29, 123 N.M. 239, 938 P.2d 1384 ("Members of [administrative] tribunals are entitled to hold views on policy, even strong views, and even views that are pertinent to the case before the tribunal."); *see also* 3 Kenneth Culp Davis, *Administrative Law Treatise* § 19:2, at 372 (2d ed.1980).

20. Moreover, we do not believe that City Council members must be so insulated from their community as to require them to be detached from all issues coming before them. While Siesta Hills correctly points out that city officials must avoid acting or voting on matters wherein they have a conflict of interest or their actions give rise to an appearance of impropriety, we do not believe Councilor Robbins' participation in the annexation and zoning approval matters in this case served to invalidate the proceedings here.

*CONCLUSION*

21. The decision of the Albuquerque City Council approving annexation and special use zoning of the Property in this case is affirmed.

22. IT IS SO ORDERED.

PICKARD and WECHSLER, JJ., concur.