**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-114**

**Filing Date:  October 4, 2011**

**Docket No. 30,264**

**NICK RICCI, LYNDA RICCI, MEADE**
**ESTATE NEIGHBORHOOD ASSOCIATION,**
**FRANK CHAVEZ, WILLIAM ACEVES, JR.,**
**WILLIAM ACEVES, IRMA ACEVES,**
**DEBORAH HALL, KENNETH TISDALE,**
**DANIEL ORTEGA, and ROXANNE ORTEGA,**

        **Petitioners-Appellants,**

**v.**

**BERNALILLO COUNTY BOARD OF**
**COUNTY COMMISSIONERS,**

        **Respondent-Appellee,**

**and**

**ALBUQUERQUE EXCAVATORS, INC.,**
**LORETTA CHAVEZ, and WILLIAM F. DAVIS,**

        **Interested Parties.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Geraldine E. Rivera, District Judge**

Oman & Yntema P.A.
Hessel E. Yntema, III
Albuquerque, NM

for Appellants
Bernalillo County
Jeffrey Landers, County Attorney
Patrick F. Trujillo, Deputy County Attorney
Albuquerque, NM

1

for Appellee

**OPINION**

**SUTIN, Judge.**

**{1}**     Petitioners-Appellants (Petitioners), who are neighbors of property to be developed into a residential subdivision were unsuccessful in their attempt, before the Bernalillo County Board of County Commissioners (the board), to stop a developer from removing certain material in the ground before construction of the subdivision. The material being removed had commercial value in and of itself. The board approved issuance of a special-use permit for the excavation and removal of the material. Petitioners unsuccessfully appealed to the district court, and now, on certiorari, they ask this Court to reverse the district court with remand to the board. Petitioners assert that the board failed to employ the correct standard for issuance of a special-use permit.

**{2}**     The dispute regarding the correct standard for issuance of a special-use permit is whether an administratively adopted standard for issuance of special-use permits should include additional criteria that our Supreme Court established for approval of a zone map change in *Albuquerque Commons Partnership v. City Council of Albuquerque* (*ACP*), 2008-NMSC-025, 144 N.M. 99, 184 P.3d 411. We hold that the board was not required to employ the *ACP* criteria in considering issuance of the special-use permit.

**BACKGROUND**

**{3}**     The petition for a writ of certiorari filed by Petitioners, stems from their unsuccessful appeal to the district court from a decision of the board. The board approved an application for a special-use permit for mining, excavating, removing, processing, and stockpiling. This work was to be done in connection with development of a subdivision. The district court affirmed the findings and decision of the board. The applicants for the special-use permit were Loretta Chavez, the owner of property to be developed, whom we refer to as "Developer," and Albuquerque Excavators, Inc. (Excavators), the company hired to perform the work permitted under the special-use permit. Developer and Excavators were Interested Parties in the district court proceeding.

**The Administrative Proceedings**

**{4}**     Developer applied to Bernalillo County (the county) to develop a thirty-one unit subdivision on an approximate fifty-six acre site, following which a grading and drainage plan was approved by the county. In the process of grading and draining, it was discovered that the soil underneath the property was rich in aggregate material, sand, and gravel. Developer determined that it would be worthwhile to remove the material because it was valuable and because the material would ultimately have to be removed to develop the lot. When Excavators started the removal, the county issued a zoning violation citation based on

2

rock removing activity. Consequently, Developer and Excavators applied for the special-use permit.

**{5}** The Bernalillo County Planning Commission (the planning commission) denied the application for a special-use permit, concluding that because the site was located next to a residential area, it would be detrimental to the residential area, and also concluding that Developer failed to demonstrate that the existing A-1 zoning was inappropriate. Developer appealed the planning commission's denial of the special-use permit to the board, and the board reversed the planning commission's determination and granted the special-use permit.

**{6}** Specifically, the board found that the request for the special-use permit was consistent with County Zoning Ordinance Resolution 116-86 and Policies of the Rural Area Section of the Albuquerque/Bernalillo County Comprehensive Plan (the plan) in that the site was near other sand and gravel sites and was not near highly scenic or prime recreational areas. The board also found the request to be consistent with a Resolution 116-86 "more advantageous to the community" standard, on the ground that the "land use is more advantageous to the community since it encourages a small-scale, locally owned and operated industry and reduces the need to travel as articulated in Policies 3.g, 6.a, 6.b [and] 6.g of the . . . [p]lan." The board further determined that the request was consistent with the health, safety, and general welfare of residents of the county, a requirement also contained in Resolution 116-86. The board imposed a number of conditions on the permit. The conditions consisted of a substantial number of requirements and restrictions, and the permit was issued for two years.

**The District Court's Decision**

**{7}** Petitioners raised only one issue in their appeal to the district court from the decision of the board: whether the board applied the wrong legal standard in approving the Interested Parties' request for a special-use permit. In the district court, Petitioners asserted that when applying the standard of "more advantageous to the community," the board did not act in accordance with the law because the board failed to specifically find that "(1) there is a public need for a change of the kind in question, and (2) that need will be best served by changing the classification of the particular piece of property in question as compared with other available property[,]" as stated by our Supreme Court in *ACP*, 2008-NMSC-025, ¶ 30, and reiterated in *Albuquerque Commons Partnership v. City Council of Albuquerque*, 2009-NMCA-065, ¶ 16, 146 N.M. 568, 212 P.3d 1122, *rev'd on other grounds*, 2011-NMSC-002, 149 N.M. 308, 248 P.3d 856.

**{8}** According to the district court, the board's response in the district court was that *ACP* did not apply to special-use permits but applied to zone map downzoning circumstances only, as reflected by the fact that the findings required in *ACP* were preceded by the following reference to downzoning from *ACP*, 2008-NMSC-025, ¶ 30.

3

[The resolution] adequately accommodates the need for planning and zoning flexibility. Therefore, without adopting any absolute standards or mechanical tests, we recognize that a municipality may be able to justify an amendment that downzones a particular property by demonstrating that the change is "more advantageous to the community, as articulated in the [c]omprehensive [p]lan or other [c]ity master plan." The proof in *such* a case would have to show, at a minimum, that ". . . there is a public need for a change . . . ."

(Emphasis added.) (Citations omitted.) The district court indicated further that the board had asserted that the word *such*, found in the last sentence of the quoted material, can only refer to a downzoning case because of the language that precedes the word. The district court read the board's position to be that, because the case before the board did not involve downzoning, Interested Parties did not have to meet the additional criteria in *ACP* in order to obtain a special-use permit. And the district court noted that the board distinguished *ACP* on the ground that Interested Parties were not seeking a zone change but were merely seeking a special-use permit under the existing zoning of A-1, and the court further noted that after two years the special use would cease to be and the site would revert to A-1 zoning without a special-use overlay.

**{9}**    The district court's rationale for affirming the findings of the board and the board's decision was based in part on its analysis of *Miller v. City of Albuquerque*, 89 N.M. 503, 554 P.2d 665 (1976), and a later case relating to zoning. *Miller* involved review of a zone change approved by a city commission, and it set out a standard for zone changes called the "change-or-mistake rule." *See id.* at 506, 554 P.2d at 668 ("The fundamental justification for an amendatory or repealing zoning ordinance is a change of conditions making the amendment or repeal reasonably necessary to protect the public interest. Also, a zoning amendment may cover and perfect previous defective ordinances or correct mistakes or injustices therein." (internal quotation marks and citation omitted)). The district court stated that the later decision, *W. Old Town Neighborhood Ass'n v. City of Albuquerque*, 1996-NMCA-107, ¶ 23, 122 N.M. 495, 927 P.2d 529, *superseded by statute on other grounds as stated in C.F.T. Dev., LLC v. Bd. of Cnty. Comm'rs*, 2001-NMCA-069, 130 N.M. 775, 32 P.3d 784[1], clarified that *Miller* did not apply only to rezonings and downzonings. The district court noted that "the 'more advantageous to the community' standard" was "the subsequently added third element" to the change-or-mistake rule.

**{10}**    Turning then to *ACP*, the district court quoted *ACP*'s statement that "New Mexico courts have not limited the *Miller* rule's applicability to piecemeal rezonings of single parcels, but have extended it to downzonings done pursuant to a comprehensive plan, and even to an upzoning of a specific property upon petition of the landowner." *ACP*, 2008-

---

[1] *C.F.T. Dev., LLC* was overruled on other grounds by *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, 133 N.M. 97, 61 P.3d 806.

4

NMSC-025, ¶ 26. The district court concluded that "[a] special-use permit, however, is neither a rezoning, a downzoning or an upzoning[,]" referring to language in *Embudo Canyon Neighborhood Ass'n v. City of Albuquerque*, 1998-NMCA-171, ¶ 16, 126 N.M. 327, 968 P.2d 1190, *superseded by statute on other grounds as stated in C.F.T. Dev., LLC*, 2001-NMCA-069. Therefore, the district court reasoned, "the enhanced criteria stated in *ACP* [did] not apply[,]" and the board was required to find only that a different use category would be more advantageous to the community under the factors employed by the board. Accordingly, in the district court's view the board's decision was in accordance with the law, as it was based on the correct legal standard and because the enhanced standard from *ACP* that Petitioners required did not apply to special-use permits.

## DISCUSSION

**{11}** Petitioners fault the board for failing to apply the standards of proof required in *ACP* when considering the "more advantageous to the community" standard. This failure, according to Petitioners, resulted in an approval of the special-use permit that was not in accordance with law. Petitioners ask this Court to reverse and remand for the board to evaluate whether the special-use permit would be more advantageous to the community under the standards of proof established in *ACP*.

### Standard of Review

**{12}** The standards of review on appeal to the district court from an administrative decision are well established in our cases. *See Gallup Westside Dev., LLC v. City of Gallup*, 2004-NMCA-010, ¶ 10, 135 N.M. 30, 84 P.3d 78; *Siesta Hills Neighborhood Ass'n v. City of Albuquerque*, 1998-NMCA-028, ¶ 6, 124 N.M. 670, 954 P.2d 102; *W. Old Town Neighborhood*, 1996-NMCA-107, ¶ 11. We apply the same administrative standards of review. *Rio Grande Chapter*, 2003-NMSC-005, ¶ 16; *see* NMSA 1978, § 39-3-1.1(D) (1999); Rule 1-075(R) NMRA. We review whether a ruling by an administrative agency is in accordance with the law de novo. *Clark v. N.M. Children, Youth & Families Dep't*, 1999-NMCA-114, ¶ 7, 128 N.M. 18, 988 P.2d 888.

### Consideration of *ACP* Criteria When Approving a Special-Use Permit

**{13}** The planning commission's determination in the record before us states that Resolution 116-86 defines criteria for evaluating zone map changes and special-use permit applications. This planning commission document sets out nine "policies for deciding zone map changes and [special-use] [p]ermit applications[.]" One of the nine policies notably contains change-or-mistake criteria plus a third factor, more advantageous to the community. It reads:

> E. The applicant must demonstrate that the existing zoning is inappropriate because:

1.    An error in the original zone map[;]

2.    Changed neighborhood conditions, which justifies a change in land use[;] or

3.    That a different use category is more advantageous to the community as articulated in the . . . [p]lan or other land use plans as adopted by the [b]oard[.]

Petitioners assert that under Resolution 116-86 this policy is applicable equally to zone map changes and special-use permits.

**{14}**    In *ACP*, our Supreme Court stated, in the context of a zone map amendment resulting in downzoning a property, that "a municipality may be able to justify an amendment that downzones a particular property by demonstrating that the change is more advantageous to the community, as articulated in the [c]omprehensive [p]lan or other [c]ity master plan[,]" but that "[t]he proof in such a case would have to show, at a minimum, that '(1) there is a public need for a change of the kind in question, and (2) that need will be best served by changing the classification of the particular piece of property in question as compared with other available property." *ACP*, 2008-NMSC-025, ¶ 30 (internal quotation marks and citations omitted).

**{15}**    While acknowledging that *ACP* is not a special-use permit case, Petitioners contend that its reasoning applies to special-use permits, particularly where, as here, the county zoning code requires the same treatment for special-use permits as for zone map changes. *See Cadena v. Bernalillo Cnty. Bd. of Comm'rs*, 2006-NMCA-036, ¶ 9, 139 N.M. 300, 131 P.3d 687 (stating that "when invoked, [Resolution 116-86] . . . imposes substantive and procedural guidelines for any zone map changes and applications for special-use permits" (alteration omitted) (internal quotation marks and citation omitted)). In the same breath, Petitioners reject, as an incorrect reading of New Mexico law, the board's argument that *ACP* applies to downzoning only and not to a zone change, arguing that the case from which *ACP* obtained its standards for the downzoning involved a zone change from "single family residential" to "planned residential" and did not involve either "downzoning" or "upzoning." *See Fasano v. Bd. of Cnty. Comm'rs*, 507 P.2d 23, 28-30 (Or. 1973) (en banc) (requiring proof that for a change in conformance with the comprehensive plan, at a minimum, there should be proof that (1) there is a public need for a change of the kind in question, and (2) that need will be best served by changing the classification of the particular piece of property in question as compared to other available property), *superseded by statute/rule as stated in Menges v. Bd. of Cnty. Comm'rs*, 606 P.2d 681 (Or. Ct. App. 1980); *see also Embudo Canyon*, 1998-NMCA-171, ¶¶ 17-18 (distinguishing special-use permits and zone changes, but, according to Petitioners, treating the requested special-use permit like a zone change because the city's ordinance required application for a zone change, not a special-use permit). A final attack on the board's decision is that it constitutes nothing more than an ad hoc determination lacking in discernable standards. Petitioners seek greater definitional

protection against unfettered discretion through application of the *ACP* criteria since those standards provide "certain policies and uniform rules of action" and limit the "wide discretion to grant [special-use] permits as 'more advantageous to the community[.]'" For these reasons, Petitioners contend that the board's failure to address the *ACP* standards in relation to the approval of the special-use permit resulted in an approval that was not in accordance with law.

**{16}** We are not persuaded by Petitioners' arguments. Nothing in *ACP* indicates that its enhanced approval criteria were intended to apply to temporary special-use permits. We are not going to expand *ACP*'s zoning context involving restrictive and durationally indeterminate zone map changes to circumstances in which a developer seeks to temporarily lessen a restrictive zoning under a limited-in-time, special-use permit. We leave it to our Supreme Court to consider whether the additional definitional criteria it required for a zone map change are suited equally for special-use permits.

**The Dissent**

**{17}** Judge Garcia's dissenting view essentially adopts Petitioners' logic, which is that (1) *ACP* applies to zoning under Resolution 116-86, (2) Resolution 116-86 applies equally to zoning and special use permits, therefore, (3) *ACP* applies to special-use permits. The concern we have with the logic is that *ACP*'s judicially adopted enhanced criteria are not in the Resolution; *ACP* did not apply its enhanced criteria to anything but zoning; and in construing its own resolution, the board could have applied, but refused to apply, *ACP*'s enhanced criteria to special-use permits. Nothing in *ACP*, as we read it, indicates that the Resolution must, as a matter of law, be read to incorporate the judicially created enhanced criteria as necessarily applicable to both zoning and special-use permits. Because the enhanced criteria came into existence solely through judicial adoption to be applied to zoning, we think it is more appropriate to leave to our Supreme Court the requirement, as a matter of law, that the enhanced criteria be applied under the Resolution to special-use permits.

**CONCLUSION**

**{18}** We affirm the decision of the district court. The board's refusal to apply the *ACP* criteria required in considering a governmental entity's proposed zone map change to consideration of issuance of a limited, less restrictive, special-use permit was in accordance with law.

**{19}** **IT IS SO ORDERED.**

---

    **JONATHAN B. SUTIN, Judge**

**I CONCUR:**

7

_____

**CELIA FOY CASTILLO, Chief Judge**

**TIMOTHY L. GARCIA, Judge (dissenting).**

**GARCIA, Judge, (dissenting).**

**{20}** I respectfully disagree with the majority and would apply the criteria set forth in *ACP* and *Miller* to a special-use permit under Resolution 116-86.

**{21}** County Resolution 116-86 was adopted to apply an identical application criteria for zone changes and special-use permits. The County chose to adopt the same policies, procedures, and criteria to all the potential changes contemplated by applications submitted under Resolution 116-86. "A municipal legislative body is bound to follow the regulations it has adopted, in the exercise of its delegated legislative power." *Miller*, 89 N.M. at 507, 554 P.2d at 669. The factual findings necessary to satisfy the more advantageous to the community criteria require "proof in such a case would have to show, at a minimum, that . . . there is a public need for a change of the kind in question[.]" *ACP*, 2008-NMSC-025, ¶ 30 (internal quotation marks and citation omitted). "[B]ecause such changes must be justified pursuant to the *Miller* rule and Resolution [116-86] (or a similar local policy), they require specific factual findings relating to the affected properties." *ACP*, 2008-NMSC-025, ¶ 32; *see Miller*, 89 N.M. at 506, 554 P.2d at 668.

**{22}** Although the present case factually differs from the downzoning changes in *ACP* and *Miller*, the uniform criteria identified in Resolution 116-86 is not limited to zoning changes and must also be applied to special-use permits placed within the same resolution. Special-use permits, like small scale zone changes are usually restricted to identifiable persons or groups and would be considered quasi-judicial actions rather than legislative actions. *See ACP*, 2008-NMSC-025, ¶ 32. Because such small-scale zoning changes must be justifiable under the *Miller* rule and the applicable resolution, applying a different criteria to special-use permits that have been intentionally placed within the same land-use regulation is illogical. Rigid application of the *Miller* rule is not always necessary to protect the beneficial interests of the community at large. *ACP*, 2008-NMSC-025, ¶ 30. Through this dissent, I do not suggest that the County was legally incapable of applying a less restrictive criteria for the quasi-judicial review of a special-use permit application. It was the County's decision to identify only one criteria to be applied to zoning changes and special-use permits under Resolution 116-86 that is determinative in this case. Where a more restrictive judicial criteria is required when determining whether a small-scale zoning application is "more advantageous to the community," there is no reason the County does not have the right to impose this same restrictive criteria on other small-scale special-use applications that are quasi-judicial. By intentionally including special-use permits under the same zoning resolution adopted by the County, the more restrictive criteria must now be imposed for both types of applications. Once the same criteria is applied, *ACP* and *Miller* require a finding and determination that the public's needs and interests are protected by the necessary change

8

being proposed for the property.  *See ACP*, 2008-NMSC-025, ¶ 30; *Miller*, 89 N.M. at 506, 554 P.2d at 668.

**{23}**     I would reverse and remand this case to the district court with instructions to examine the record to determine whether the board's decision was supported by proof and to make findings establishing that there was a public need for the change contemplated by the application for a special-use permit.  For the reasons stated herein, I dissent.

 

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Ricci v. Bernalillo Co. BCC*, No. 30,264**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-AA | Administrative Appeal |
| AL-JR | Judicial Review |
| AL-SC | Scope of Review |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **GV** | **GOVERNMENT** |
| GV-CU | Counties |
| GV-LU | Land Use |
| GV-ZL | Zoning Law |
| | |
| **PR** | **PROPERTY** |
| PR-MR | Mineral Resources |