**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-044

Filing Date: March 20, 2012

Docket Nos. 30,458 and 30,459 (consolidated)

LOS CHAVEZ COMMUNITY ASSOCIATION,
et al.,

       Petitioners-Appellees,

v.

VALENCIA COUNTY and the BOARD OF
COUNTY COMMISSIONERS,

       Respondents,

and

JOHN WHISENANT and ELIAS BARELA,

       Interested Parties-Appellants.


**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**John F. Davis, District Judge**

Hunt & Davis, P.C.
Catherine F. Davis
Julie J. Vargas
Albuquerque, NM

for Appellees

Chavez Law Firm, P.C.
Steven M. Chavez
Los Lunas, NM

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Jocelyn Drennan

Albuquerque, NM

for Appellants

**OPINION**

**CASTILLO, Chief Judge.**

**{1}** The issue in this case is whether a county commissioner is required to recuse herself from voting on an application for a zoning map amendment if she is a first cousin to one of the applicants. We conclude that the due process protections of the state and federal constitutions, as well as the language in Article VI, Section 18 of the New Mexico Constitution, require recusal. Thus, we affirm the decision of the district court.

**BACKGROUND**

**{2}** The facts are not in dispute. Appellants John Whisenant and Elias Barela (Appellants) applied to the Valencia County Board of County Commissioners (Board) for a zone change to allow a planned residential subdivision on adjacent properties they own in Valencia County. Appellants sought to turn three parcels of land encompassing about forty acres into fifteen residential lots of between two and two-and-a-half acres in size. The Board, on a 3-2 vote, approved the change in zoning status from Agricultural Preservation to Rural Residential 2, which would allow division of the land into the smaller lot sizes. Commissioner Georgia Otero-Kirkham, who is a first cousin to Barela, voted in favor of the change. Before the vote was taken, a neighborhood resident asked Commissioner Otero-Kirkham at the public hearing whether she would recuse herself from the vote because of her family ties to Barela. Commissioner Otero-Kirkham stated that "we're not that close" and that she had sought an opinion from the Board's attorney who informed her that she need not recuse herself.

**{3}** After the Board approved the zoning change, Los Chavez Community Association and a number of individuals (Los Chavez) appealed the decision to district court. Los Chavez sought reversal on the grounds that the decision of the Board was arbitrary and capricious and that it lacked substantial evidentiary support. Los Chavez also maintained that the group was denied fundamental due process because Commissioner Otero-Kirkham's refusal to recuse herself presented an appearance of impropriety and bias, essentially denying Appellants' opponents of an opportunity for a fair hearing before the Board. The district court reversed the decision of the Board, relying on the "spirit" of the New Mexico Constitution and citing the failure to recuse as a due process violation. The court remanded the case for a hearing without Commissioner Otero-Kirkham's participation, and Appellants filed this appeal.

**DISCUSSION**

**{4}**     In addition to the question of recusal and due process, we asked the parties to brief two threshold issues:  whether the district court's order is final for purposes of this appeal and whether the issue is properly before us pursuant to a discretionary petition for writ of certiorari from the district court's exercise of its appellate jurisdiction or as a direct appeal as of right from the district court's exercise of its original jurisdiction.  We address those threshold issues before proceeding to the main issue.

**The Doctrine of Practical Finality Applies Here**

**{5}**     We first decide whether this appeal is properly before us on a final order from the district court.  "In general, the right to appeal is restricted to final judgments and decisions." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 119 N.M. 29, 33, 888 P.2d 475, 479 (Ct. App. 1994).  "A final order is commonly defined as an order that decides all issues of fact and law necessary to be determined or which completely disposes of the case to the extent the court had the power to dispose of it." *State v. Begay*, 2010-NMCA-089, ¶ 11, 148 N.M. 685, 241 P.3d 1125.  "Ordinarily, an order remanding a case for further proceedings in a lower court is not considered 'final' for purposes of appeal." *State v. Ahasteen*, 1998-NMCA-158, ¶ 11, 126 N.M. 238, 968 P.2d 328, *abrogated on other grounds by State v. Savedra*, 2010-NMSC-025, 148 N.M. 301, 236 P.3d 20.  But some appeals from cases otherwise not considered final may be permitted under the doctrine of "practical finality." *High Ridge Hinkle Joint Venture*, 119 N.M. at 34, 888 P.2d at 480.  The issue of finality is not to be treated robotically but instead "is to be given a practical, rather than a technical, construction." *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992), *limited on other grounds by Trujillo v. Hilton of Santa Fe*, 115 N.M. 397, 398, 851 P.2d 1064, 1065 (1993).  In reversals and remands by a lower reviewing court, it is helpful to consider "the context in which the district court ordered the remand." *Alba v. Peoples Energy Res. Corp.*, 2004-NMCA-084, ¶ 11, 136 N.M. 79, 94 P.3d 822.  We consider this flexible approach, though, in light of "the strong policy in New Mexico disfavoring piecemeal appeals." *Kelly Inn No. 102, Inc.*, 113 N.M. at 239, 824 P.2d at 1041.

**{6}**     Despite the policy against piecemeal litigation, "our jurisprudence has permitted appeals from certain orders even though a disputed issue remains." *Roark v. Farmers Grp., Inc.*, 2007-NMCA-074, ¶ 42, 142 N.M. 59, 162 P.3d 896.  "Such interests must be of the greatest importance, given the countervailing powerful interest in avoiding piecemeal appeals." *State v. Apodaca*, 1997-NMCA-051, ¶ 16, 123 N.M. 372, 940 P.2d 478.  We note that "[t]he considerations that determine finality are not abstractions but have reference to very real interests—not merely those of the immediate parties, but, more particularly, those that pertain to the smooth functioning of our judicial system." *Kelly Inn No. 102, Inc.*, 113 N.M. at 239, 824 P.2d at 1041 (alteration in original) (internal quotation marks and citation omitted).  We take note of that philosophy in the case before us, where "the underlying legal issue . . . is important to the continuing ability of the [c]ommission to function[.]" *Cox v. Mun. Boundary Comm'n*, 1998-NMCA-025, ¶ 12, 124 N.M. 709, 954 P.2d 1186.  Thus, we are mindful of "the policies of judicial efficiency and facilitation of meaningful appellate review." *Roark*, 2007-NMCA-074, ¶ 45.

**{7}** In the matter at hand, we find two bases for allowing this appeal to proceed under the doctrine of practical finality. First, we agree with Appellants that the question of when a county commissioner must recuse herself in deciding a zoning-use matter involving a relative is one of continuing importance to the Board in Valencia County and to other such bodies statewide. As noted above, even though the circumstances in this case can be distinguished, the reasoning in *Cox* applies because the issue before us affects the operation of the Board and potentially other county boards across the state. The issue of the impartiality of a county zoning board commissioner in cases involving a relative is likely to be repeated in Valencia County and elsewhere. The policies of judicial efficiency and meaningful appellate review apply here.

**{8}** Second, fairness to the parties dictates that we accept this appeal. Appellants should not have to go back to the beginning of the application process if there is a chance that appellate review by this Court would spare them that time and expense in a process that could be burdensome and wasteful. *See Begay*, 2010-NMCA-089, ¶ 14 (accepting appeal and refusing to subject a defendant to a potentially needless revocation hearing at the magistrate court level). We also agree with Appellants that a change in the makeup of the Board (since the election in 2010) and the effect of the current economic climate could make the district court's remand order tantamount to a denial because of the constantly shifting political and economic landscape. If this Court refuses to hear the appeal, the matter would be reconsidered by the Board absent Commissioner Otero-Kirkham, and if the application were rejected, Appellants would be faced with deciding whether to appeal on the same grounds as in the present case: that the district judge's decision regarding recusal was error. *See id* ¶ 13. Deciding the issue now would eliminate the possibility of more years of litigation and appeal only to end up in this very spot. For the foregoing reasons, we conclude that practical finality is present in this case.

**This Appeal Arises From the District Court's Original Jurisdiction**

**{9}** We also asked the parties to brief whether the issue before us is a discretionary appeal pursuant to a writ of certiorari or if it is an appeal of right based on the district court's original jurisdiction. We agree with both parties that this appeal properly arises from the district court's original jurisdiction. "Whether the district court is possessed of jurisdiction over the subject matter of a case is a question of law that we review de novo." *Ottino v. Ottino*, 2001-NMCA-012, ¶ 6, 130 N.M. 168, 21 P.3d 37.

**{10}** When appeals arise out of administrative proceedings, we distinguish between issues that the district court takes up under its appellate jurisdiction and those it addresses under its original jurisdiction. Our district courts are recognized as courts of general jurisdiction. *See id.* A district court is given "original jurisdiction in all matters and causes not excepted in this [C]onstitution, and such jurisdiction of special cases and proceedings as may be conferred by law, and appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts[.]" N.M. Const. art. VI, § 13. We have previously acknowledged that, regarding the appellate role of district courts in the administrative

scheme, the idea of original jurisdiction "may appear to be contrary to the rule that when the district court sits as an appellate tribunal, in the absence of a statutory exception, it is limited to consideration of the record below." *Maso v. N.M. Taxation & Revenue Dep't*, 2004-NMCA-025, ¶ 16, 135 N.M. 152, 85 P.3d 276, *aff'd*, 2004-NMSC-028, 136 N.M. 161, 96 P.3d 286. But in *Maso*, we observed that due process claims are appropriately addressed by the district court under its powers of original jurisdiction. *Id.* ¶ 15. "To hold otherwise would effectively foreclose any due process challenges to the administrative process, which would impermissibly constrain the right of access to the courts." *Id.* ¶ 16. Thus, we reasoned, a district court "can simultaneously exercise its appellate and original jurisdiction." *Id.* ¶ 17. And we concluded that "[w]ithout question, the district court has the authority to consider constitutional claims in the first instance." *Id.* ¶ 14.

**{11}** In the case before us, as in *Maso*, the district court was faced with a constitutional question of due process. And here, the district court based its ruling exclusively on the question of Commissioner Otero-Kirkham's refusal to recuse herself, which the district court concluded was a violation of Los Chavez's due process right to a fair and impartial tribunal. The fact that Los Chavez's original appeal to the district court invoked only that court's appellate jurisdiction is not fatal to our analysis. *See State v. Roybal*, 2006-NMCA-043, ¶ 17, 139 N.M. 341, 132 P.3d 598 (stating that "it is the substance of the [pleading], and not its form or label, that controls" the question of jurisdiction). Thus, Los Chavez's appeal is properly before this Court through an appeal of right based on the district court's original jurisdiction.

**Due Process Requires Recusal**

**{12}** We now turn to the merits of the case. "We review questions of constitutional law and constitutional rights, such as due process protections, de novo." *N.M. Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 27, 142 N.M. 248, 164 P.3d 947.

**{13}** Under the zoning ordinance for Valencia County, the Board is the ultimate decision-making body for zone changes such as the one requested by Appellants. Valencia County Ordinance No. 2004-05, § 154.061(B)(3)(a) (2004). When making this type of decision, the Board acts in a quasi-judicial capacity. *Id.* § 154.061. Appellants recognize that when Board members act in a quasi-judicial capacity, they "must act like a judicial body bound by ethical standards comparable to those that govern a court in performing the same function." *Albuquerque Commons P'ship v. City Council of Albuquerque* (*ACP*), 2008-NMSC-025, ¶ 33, 144 N.M. 99, 184 P.3d 411 (internal quotation marks and citation omitted).

**{14}** Relying on *West Bluff Neighborhood Ass'n v. City of Albuquerque*, 2002-NMCA-075, ¶ 52, 132 N.M. 433, 50 P.3d 182, *overruled on other grounds by Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16 & n.10, 133 N.M. 97, 61 P.3d 806, Appellants argue that not all allegations of bias or prejudice are the same and not all render a proceeding fundamentally unfair. Appellants' position is that quasi-judicial

5

adjudicators are presumed to be impartial and that the measure of the appearance of bias on the part of such a fact-finder is found in ethical standards comparable, but not identical, to those to which we hold judges. They suggest a "flexible and pragmatic" approach to gauging the impartiality of quasi-judicial decision-makers whereby a court would consider whether the relevant circumstances would lead an objectively reasonable individual to doubt the decision-maker's impartiality. Appellants point out that the Valencia County zoning ordinance is silent on the issue of recusal and further, that the New Mexico Code of Judicial Conduct, specifically Rule 21-211(A)(2) NMRA, requires recusal only when a party to the proceeding is within the third degree of relationship to the judge. Appellants' position is that because first cousins are fourth-degree relatives, they are not covered by the Code, and actual bias must be shown. Appellants argue that Commissioner Otero-Kirkham's first-cousin relationship is an insufficient basis for recusal in light of the fact that there is no claim of actual bias. Appellants urge reversal of the district court's determination because "the record reveals no circumstance that would disqualify Commissioner Otero-Kirkham from acting on the [Appellants'] zone change application."

**{15}**    To evaluate Appellants' arguments, we begin by looking to the history of judicial disqualification.[1] "Under early English law[,] a judge could be disqualified from presiding over a matter only when he could be shown to possess a disqualifying pecuniary interest—and then only when another judge was available to hear the cause." Richard E. Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges* § 1.4, at 7 (2d ed. 2007). Essentially, a judge's bias or prejudice was not enough to require disqualification. Throughout the United States' early independence, the narrow recusal standards of the common law prevailed, but near the turn of the nineteenth century, both federal and state governments began attempts to restrain judicial bias through statutory control. *Id.* at 8-9.

**{16}**    Disqualification of judges based on kinship is found in Rule 21-211(A)(2)(a) and requires disqualification when the judge knows that a "person within the third degree of relationship . . . is . . . a party to the proceeding[.]" The New Mexico Constitution sets a higher standard with regard to judges and the parties who appear before them.

> No justice, judge or magistrate of any court shall, except by consent of all parties, sit in any cause in which either of the parties are related to him by affinity or consanguinity within the degree of first cousin, or in which he was counsel, or in the trial of which he presided in any inferior court, or in which he has an interest.

N.M. Const. art. VI, § 18.

**{17}**    The New Mexico Legislature has imposed the higher constitutional restriction on

---

[1]    We recognize that the terms "recusal" and "disqualification" are often used interchangeably. *See* Rule 21-211comm. cmt. at ¶ 1.

other quasi-judicial tribunals. For example, quasi-judicial unemployment compensation hearing officers are prohibited from sitting "in any administrative or adjudicatory proceeding in which . . . either of the parties is related to the hearing officer, member of the board of review or secretary by affinity or consanguinity within the degree of first cousin[.]" NMSA 1978, § 51-1-8(E)(1) (2004). Similarly, the language of Article VI, Section 18 of the New Mexico Constitution is repeated in NMSA 1978, § 35-3-8(A)(1) (1968), and it states that no magistrate shall sit in any action in which "either of the parties is related to him by affinity or consanguinity within the degree of first cousin[.]" In determining that Commissioner Otero-Kirkham should have recused herself, the district court referred to these constitutional and statutory requirements.

**{18}**  Los Chavez agrees with the district court's approach. They argue that quasi-judicial decision-makers should be held to the same constitutional standard as judges. Clearly, judges and unemployment compensation hearing officers are restricted from sitting on cases with parties who are related to them within the degree of first cousin. The New Mexico Constitution does not specifically mention quasi-judicial decision- makers, and there is no statute that deals specifically with disqualification of New Mexico county commissioners when they are acting in a quasi-judicial capacity. Thus, our question is whether board members who sit in a quasi-judicial capacity should be bound by the kinship-based disqualification requirements found in the language of Article VI, Section 18 of the New Mexico Constitution based on due process protections of the state and federal constitutions, as construed in applicable case law. We conclude that they do.

**{19}**  We begin by reaffirming the proposition that those who sit on boards adjudicating individual property applications for changes in zoning designations act in a quasi-judicial capacity. *See ACP*, 2008-NMSC-025, ¶¶ 32-33. "Small-scale zone changes" are quasi-judicial when they "involve[] a determination of the rights, duties, or obligations of specific individuals on the basis of the application of currently existing legal standards." *Id.* ¶ 32 (internal quotation marks and citation omitted). Such a quasi-judicial zoning hearing "carries with it important procedural consequences." *Id.* ¶ 33. Such zoning matters "are not politics-as-usual as far as the municipal governing body is concerned[,]" and the presiding board members "must act like a judicial body bound by 'ethical standards *comparable to those that govern a court* in performing the same function.'" *Id.* (emphasis added) (quoting *High Ridge Hinkle Joint Venture*, 119 N.M. at 40, 888 P.2d at 486).

**{20}**  The Fourteenth Amendment of the United States Constitution protects citizens from state action that leads to "deprivations of liberty and property without due process of law." *Mills v. State Bd. of Psychologist Exam'rs*, 1997-NMSC-028, ¶ 14, 123 N.M. 421, 941 P.2d 502. The New Mexico Constitution's Due Process Clause echoes the federal one: "No person shall be deprived of life, liberty or property without due process of law[.]" N.M. Const. art. II, § 18. "Procedural due process requires a fair and impartial hearing before a trier of fact who is disinterested and free from any form of bias or predisposition regarding the outcome of the case." *Riegger*, 2007-NMSC-044, ¶ 27 (internal quotation marks and citation omitted). These principles of fairness are basic to our justice system.

**{21}** The substance of Article VI, Section 18 has been part of the New Mexico Constitution since statehood. "[T]he disqualification of judges for certain causes, raising a presumption of partiality, has been ever present in our Constitution[.]" *State ex rel. Hannah v. Armijo*, 38 N.M. 73, 83, 28 P.2d 511, 516 (1933). The purpose of this provision is based on due process considerations—"to secure to litigants a fair and impartial trial by an impartial and unbiased tribunal." *State ex rel. Bardacke v. Welsh*, 102 N.M. 592, 603, 698 P.2d 462, 473 (Ct. App. 1985) (internal quotation marks and citation omitted). The recusal grounds listed in Article VI, Section 18 of the New Mexico Constitution are "recognized dangerous sources of partiality" and were included in the Constitution so as to prevent "the possibility of legislative detraction in any legislative scheme of disqualification of judges on account of partiality." *Hannah*, 38 N.M. at 82, 28 P.2d at 515-16. A judge "is presumptively partial or biased if he is related to any party to the proceeding[.]" *State ex rel. Anaya v. Scarborough*, 75 N.M. 702, 704, 410 P.2d 732, 733 (1966).

**{22}** Our Supreme Court has determined it to be "imperative" that when governmental agencies adjudicate the legal rights of individuals they "use the procedures which have traditionally been associated with the judicial process." *Reid v. N.M. Bd. of Exam'rs of Optometry*, 92 N.M. 414, 416, 589 P.2d 198, 200 (1979). And, while such procedural matters as the rules of evidence or hearsay need not be adhered to by administrative agencies to the same degree as in a court of law, the right to an impartial tribunal is held to the higher standard.

> The rigidity of the requirement that the trier be impartial and unconcerned in the result applies more strictly to an administrative adjudication where many of the customary safeguards affiliated with court proceedings have, in the interest of expedition and a supposed administrative efficiency, been relaxed.

*Id.*; *see also Ohio Bell Tel. Co. v. Pub. Utils. Comm'n*, 301 U.S. 292, 304 (1937) (suggesting of the adjudicative role of administrative agencies: "All the more insistent is the need, when power has been bestowed so freely, that the inexorable safeguard of a fair and open hearing be maintained in its integrity." (internal quotation marks and citations omitted)).

**{23}** Due process requires a "neutral and detached judge in the first instance." *Ward v. Vill. of Monroeville*, 409 U.S. 57, 62 (1972). The "requirement of impartiality applies not only to judicial officers but also to private persons who serve as adjudicators." *Rissler v. Jefferson Cnty. Bd. of Zoning Appeals*, 693 S.E.2d 321, 328 (W. Va. 2010). These principles are equally applicable to administrative proceedings. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982) (stating that "due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities"). By incorporating Article VI, Section 18 into our Constitution, New Mexicans have decided that absent consent, a judge cannot hear a case in which a first cousin to the judge is a party, and this is because there is a presumption of bias. As *Reid* advises, this type of a requirement is even more relevant at the quasi-judicial level, where other trial-like rules of administrative proceedings are relaxed. 92 N.M. at 416, 589 P.2d at 200. Here, Los Chavez had a right to expect that the hearings

8

before the Board would be conducted under the basic rubric of fairness and impartiality by the decision-makers. We cannot ignore the plain language of our Constitution and the clear mandate of *Reid* and its progeny, which, when combined, tell us that the presumption of bias is fatal to the due process rights of parties appearing before quasi-judicial administrative tribunals. *See, e.g.*, *Riegger*, 2007-NMSC-044, ¶ 27 ("[D]ue process protections apply to administrative proceedings."); *City of Albuquerque v. Chavez*, 1997-NMCA-054, ¶ 11, 123 N.M. 428, 941 P.2d 509 (stating that due process guarantees that "a person . . . with interests terminated by an arm of the state receive a fair, adjudicative-style hearing").

**{24}** As Appellants recognize, New Mexico law binds quasi-judicial decision- makers to "ethical standards comparable to those that govern a court in performing the same function." *ACP*, 2008-NMSC-025, ¶ 33 (internal quotation marks and citation omitted). Appellants argue, however, that "comparable" does not mean "the same." But the basic safeguards established by standards set out in the federal and state constitutions, as well as in New Mexico statutes and rules, all have one goal—to ensure that the decision-maker is not biased. There is no principled reason to apply the prohibitions in Article VI, Section 18 of the New Mexico Constitution to judges but not to board members who are acting in an adjudicatory capacity. Our Constitution and our case law mandate that the Board member in this case, Commissioner Otero-Kirkham, should have recused herself from consideration of the zoning amendment sought by her first cousin, Barela, the co-applicant before the Board.

**{25}** Appellants also argue that such a restriction on local board members adjudicating matters involving first cousins could present hurdles in small communities where relation by blood may be harder to avoid. We also recognize Appellant's arguments that this Opinion could at times hamper administrative efficiency or the rights of residents to fully serve their communities. We have previously observed that city council members are not expected to be "so insulated from their community as to require them to be detached from all issues coming before them." *Siesta Hills Neighborhood Ass'n v. City of Albuquerque*, 1998-NMCA-028, ¶ 20, 124 N.M. 670, 954 P.2d 102. In *Siesta Hills Neighborhood Ass'n*, a city councilor participated in a zoning-change application by a day-care center to which the councilor had previously sent her children to attend a program. *Id.* ¶ 17. We concluded that because there was no evidence that the city councilor had prejudged the merits of the petition and because the councilor's actions did not "give rise to an appearance of impropriety[,]" her participation did not invalidate the proceedings. *Id.* ¶¶ 19-20. In our case, the family ties between adjudicator and applicant are not tenuous in any way; they are obvious and direct. Although our Opinion could in some instances affect the processing of zoning applications in smaller counties of New Mexico, we are not convinced by Appellants' conjecture that such a restriction on local board members would create difficulty in adjudicating zoning matters. We do not see the occasional recusal of one zoning board member causing a significant or detrimental effect on local government decisions. When acting in a quasi-judicial capacity, board members are bound by the requirements of the New Mexico Constitution that they be impartial. We do not agree that this due process safeguard will materially inhibit the carrying out of governmental business in Valencia County or other smaller counties around New Mexico.

9

**CONCLUSION**

**{26}** For the foregoing reasons, we affirm the decision of the district court and remand to the Valencia Board of County Commissioners for action not inconsistent with this Opinion.

**{27}  IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Los Chavez Community Assn. v. Valencia County*, Docket Nos. 30,458/30,459**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| | |
| **GV** | **GOVERNMENT** |
| GV-CM | Commissions |
| GV-CU | Counties |
| GV-ZL | Zoning Law |
| | |
| **JM** | **JUDGMENT** |
| JM-FJ | Final Judgment |
| | |
| **JG** | **JUDGES** |
| JG-EX | Excusal or Recusal |
| | |
| **JD** | **JURISDICTION** |
| JD-DC | District Court |