1999-NMCA-114

988 P.2d 888

Cynthia CLARK, Petitioner–Appellee,

v.

NEW MEXICO CHILDREN, YOUTH AND FAMILIES DEPARTMENT and The State Personnel Board for the State of New Mexico, Respondents–Appellants.

No. 19,235.

Court of Appeals of New Mexico.

July 2, 1999.

Certiorari Denied, No. 25,862, Aug. 23, 1999.

Kenneth R. Wagner, Kenneth R. Wagner & Associates, P.A., Albuquerque, for appellee.

Patricia A. Madrid, Attorney General, Albert J. Lama, Assistant Attorney General, Elizabeth A. Glenn, Assistant Attorney General, Santa Fe, for appellants.

*OPINION*

APODACA, J.

{1} This is an administrative appeal from the district court's judgment, which reversed a final order entered by Respondent New Mexico State Personnel Board (the Board). Petitioner Cynthia Clark (Worker) appealed her dismissal from employment with Defendant Children, Youth and Families Department (the Department). A hearing officer for the Board entered a decision and order denying Worker's appeal for lack of jurisdiction on grounds that she did not have a right of appeal. The Board entered a final order adopting the decision of the hearing officer and dismissing Worker's appeal. Worker appealed the decision to the district court. The district court reversed the Board, concluding that, based on the State Personnel Board Rules and Regulations (the State Personnel Rules) Worker had a constitutionally protected property interest in her continued employment. The Board and the Department appeal from that decision. The sole issue on appeal is whether Worker had a right of appeal under the Personnel Act, NMSA 1978, Sections 10-9-1 to -25 (1961, as amended through 1998) (the Act), the State Personnel Rules, or applicable case law. Determining that Worker had no such right, we reverse the district court and affirm the Board's final order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} In December 1977, Worker was hired by the State of New Mexico to serve under a temporary appointment as a "utility worker" for the Human Services Department (Human Services). Although the position was a temporary appointment, it was in the classified service as defined under the Act and State Personnel Rules. In 1978, Worker received a permanent appointment as a "client service agent" in the classified service with the Social Services Division of Human Services, and her functions were later transferred to the Department when the latter was created by the Legislature. At that time, Worker completed a twelve-month probationary period. Approximately thirteen years later, in June 1991, Worker voluntarily resigned her classi-

fied position, and in July 1991, accepted an exempt position as a Division Director II. *See* NMSA 1978, § 10-9-4(D) (1990) (exempting the position of director of a department division from the classified service). "Exempt service" is defined as "all positions in the executive branch of state government exempt from the classified service by law." State Personnel Board Rule 1.17 (Feb. 26, 1994). As director of the Social Services Division, by statute, Worker served at the pleasure of the Secretary of the Department. *See* NMSA 1978, § 9-2A-10 (1992) ("The secretary [of the Department] may appoint, with the approval of the governor, 'directors' of such divisions as are established within the department."). As a director, Worker was thus exempt from the provisions of the Act. *See id.*

{3} Prior to her resignation from the classified service and acceptance of the exempt position, a New Mexico State Personnel Office general memorandum, dated March 25, 1991, was circulated "[t]o provide guidance to agencies when probationary or permanent incumbents accept exempt or temporary appointments in the classified service." The memorandum stated: "Probationary, term, and permanent incumbents accepting exempt appointments must resign from their classified positions and lose all rights associated with the classified appointments." The memorandum was addressed to cabinet secretaries, agency directors, and personnel officers. It is thus unclear whether Worker received or saw a copy of that memorandum, but as we note later in this opinion, that question is not necessary to our disposition.

{4} In December 1994, Worker voluntarily resigned her position in the exempt service in order to be assigned to a Manager V position with the Department. In that position, Worker reentered the classified service. A document dated January 25, 1995, and entitled "Children, Youth and Families Department New Employee Notice of Employment Status," reflects her signature acknowledging that her position was probationary and that she could be dismissed without the right of appeal. The signing of this document, however, is not determinative of our disposition. Worker was dismissed from her

position as Manager V with the Department effective February 17, 1995. The correspondence notifying Worker of her dismissal stated that she had no right of appeal to the Board.

{5} Worker nevertheless appealed her dismissal to the Board. The hearing officer for the Board entered a decision and order dismissing the appeal for lack of jurisdiction on grounds that Worker did not have the right of appeal. Worker first filed a Writ of Mandamus in the district court. The district court granted the writ and ordered the Board to review the hearing officer's decision and order. The Board voted to adopt the hearing officer's decision and order and entered a final order, determining that Worker was not an "employee" with a right of appeal, as defined by the Act, under NMSA 1978, § 10–9–3(I) (1961). The Board determined that it lacked jurisdiction to hear Worker's appeal, and the appeal was dismissed with prejudice.

{6} On appeal, the district court reversed the Board's final order, holding that Worker was a classified employee since attaining career status in October 1979, approximately one year after first accepting a permanent classified position with Human Services. The district court also concluded that Worker had a constitutionally protected property interest in her employment with the Department under the rationale adopted in *Lovato v. City of Albuquerque*, 106 N.M. 287, 742 P.2d 499 (1987). The Board and the Department appeal the district court's judgment.

## II. DISCUSSION

### A. Standard of Review

{7} We apply whole record review in an appeal from an administrative decision. *See Anaya v. New Mexico State Personnel Bd.*, 107 N.M. 622, 625, 762 P.2d 909, 912 (Ct.App.1988). "In reviewing appeals from the district court perfected under the ... Act, the scope of our review is the same as that of the district court." *Id.* (citation omitted). We independently examine the entire administrative record to determine whether the Board's decision was arbitrary and capricious, not supported by substantial evidence,

or not within the scope of the administrative body's authority. *See id.; see also* NMSA 1978, § 10–9–18(G) (1980). Although we may not generally substitute our judgment for that of the Board, we may correct the Board's misapplication of the law. *See Clayton v. Farmington City Council*, 120 N.M. 448, 453, 902 P.2d 1051, 1056 (Ct.App.1995). The determination of whether an administrative agency's ruling is in accordance with the law is a question of law to be determined by the courts and "courts are in no way bound by the agency's legal interpretation." *Chavez v. Mountain States Constructors*, 122 N.M. 579, 584, 929 P.2d 971, 976 (1996). Nonetheless, generally, an agency's reasonable statutory interpretation, when that agency is charged with the statute's administration, is persuasive and given deference by the courts. *See Gonzales v. Allstate Ins. Co.*, 122 N.M. 137, 142, 921 P.2d 944, 949 (1996).

### B. The Act and State Personnel Rules Do Not Establish the Right of Appeal

{8} The Act governs the rights and obligations of all state employees, with certain exceptions. *See* § 10–9–4 (enumerating state positions excepted from coverage under the Act). The Act charges the Board with the duty of promulgating regulations to effectuate the Act's provisions. *See* NMSA 1978, § 10–9–10(A) (1983). The parties agree that the State Personnel Rules in effect at all material times were those promulgated on January 2, 1993.

{9} The Act, under NMSA 1978, § 10–9–18(A) (1980), provides that: "Any employee who is dismissed, demoted or suspended may, within thirty days after the dismissal, demotion or suspension, appeal to the [B]oard." Section 10–9–3(I) defines "employee" as "a person in a position in the service who has completed his probationary period." This last provision is consistent with the State Personnel Rules providing those in the "classified service," who have completed their probationary period, the right of appeal. *See* State Personnel Board Rule 3.1(C), (D) (Jan. 2, 1993). "Classified service" is defined as "all positions in the executive branch of state government [that] are not exempt by law."

State Personnel Board Rule 1.6 (Feb. 26, 1994). State Personnel Rule 3.1, entitled "Career Appointments," falls under the heading of "Classified Service Appointments." It provides:

A. A career appointment is the employment of an applicant in a position recognized by the Office as permanent.

B. A probationary period of 12 months is required of all employees unless otherwise provided for by these Rules.

   1. The probationary period includes all continuous employment regardless of class.

   2. The probationary period includes employment in temporary, emergency or term status when the employee is converted to a career appointment without a break in employment.

   3. Any full-time continuous leave without pay taken during the probationary period exceeding 30 calendar days shall extend the probationary period by the number of days of leave without pay that exceeds 30 calendar days.

   4. The suspension, demotion or dismissal of a probationer is not appealable to the Board.

C. Career status begins the day following the end of the probationary period required by Rule 3.1(B) unless otherwise provided for by these Rules.

D. The suspension, demotion, or dismissal of an employee in career status is appealable to the Board in accordance with the provisions of Rule 18.

A "probationer" is defined as "a person in the classified service who is still in the probationary period." State Personnel Board Rule 1.21 (Feb. 26, 1994). Under State Personnel Rule 3.1(B)(4), probationers do not have the right to appeal their dismissal.

■ {10} The district court relied on State Personnel Rule 3.1(B)(1), which describes the probationary period as including all "continuous employment," regardless of class, to conclude that, because Worker remained continuously employed by the Department since 1977, she had already completed her probationary period approximately a year after she first began working in the classified service for the Department in her first position as a client service agent. The court thus concluded that Worker had attained "career status" under State Personnel Rule 3.1(C), and was entitled to appeal her dismissal through the grievance process. Similarly, Worker asserts on appeal that State Personnel Rule 3.1(B)(1) relieves her from being held accountable for serving a second probationary term. Specifically, she argues that State Personnel Rule 3.1(B)(1) refers to her "continuous employment" with the Department, including her service as an exempt employee. She thus claims that, because she had already fulfilled the only probationary period she was required to complete, she was not a probationer but had attained career status and the benefits of classified service, including the right to appeal her dismissal. We disagree.

{11} We do not believe the intention of State Personnel Rule 3.1(B)(1) is to relieve Worker from serving the required probationary period upon reentering the classified service directly from an exempt position. Section B of State Personnel Rule 3.1 refers to the twelve-month probationary period required of all employees. The first three numbered subsections that follow, in our view, pertain to what can be counted towards the calculation of the twelve-month probationary period. Subsection (B)(1) states that "[t]he probationary period includes all continuous employment regardless of class." "Class" is defined as "a group of classified positions similar enough in powers and responsibilities that can be covered by the same qualifications and rate of pay." State Personnel Board Rule 1.5 (Feb. 26, 1994). Consequently, we conclude that State Personnel Rule 3.1(B)(1) allows those employed in a classified position to continuously serve their probationary period without having to recommence the twelve-month period each time their class changes. For example, if an employee who, after serving three months of their probationary period, changes class, that employee does not have to recommence the time, but may resume serving the probationary period for the remaining nine months.

{12} Worker contends that interpreting State Personnel Rule 3.1(B)(1) in this manner leads to an unreasonable and absurd result because it would require her, a continuous state employee for many years, including the time period spent in exempt status, to serve a second probationary term upon reentering the classified service. We disagree. Although there is nothing in the Act or the State Personnel Rules concerning the purpose of a probationary period, we do not believe it is unreasonable to require employees to undergo a probationary period after separating from the classified service. The essential skills needed to succeed in the classified position the individual is reentering may be different, requiring the State to determine again if the employee is suitable for the position. Even assuming an individual is reemployed in the same classified position they previously held, we can see legitimate reasons for requiring a probationary period to determine if the employee is still capable of performing the job he or she is hired to do or of fulfilling the changing needs of the particular job. Perhaps the staff has been replaced or new duties have been assigned since the employee's resignation. Consequently, we do not believe it is unreasonable to impose a probationary period on a person reentering the classified service from an exempt position, regardless of the years of employment with the State.

{13} The only provisions of the State Personnel Rules that relieve an individual from serving the probationary period do not expressly address whether an individual in Worker's circumstances is relieved from serving a probationary term. State Personnel Board Rule 14.4 (Mar. 26, 1994), entitled "Reemployment," which discusses reemployment into the classified service, addresses indirectly whether Worker was a probationer upon reentering the classified service. It provides:

A. Former employees in career status who separated from the classified service without prejudice may be reemployed within two years from the date of separation unless otherwise authorized by these Rules.

B. Former employees in career status who have resigned may be reemployed in any class they formerly held, or in the classes that replaced the classes they formerly held, without having to test.

C. Any employee who separates from the classified service to enter the United States Armed Forces, National Guard, or any organized reserve unit may be reemployed in accordance with the provisions of 38 U.S.C. § 2021 and NMSA 1978, §§ 28–15–1 to 28–15–3 (Repl.Pamp.1991).

D. The pay of employees who are reemployed shall be governed by the provisions of Rule 6.7(I).

E. Former employees who are reemployed shall serve a 12–month probationary period, except those reemployed according to the provisions of Rule 14.4(C).

State Personnel Rule 14.4(C) exempts former employees reemployed after serving in the armed forces, National Guard, or reserve unit, from serving a probationary period. Under Subsection E of this rule, however, all other "former employees" who are reemployed must serve a twelve-month probationary period.

■ {14} Worker argues that, although the State Personnel Rules specifically delineate when at least three types of employees, other than those newly hired, are required to serve a probationary period upon reentering the classified service, there is no provision concerning an individual who enters the classified service, resigns, accepts an exempt position, and then is reemployed in the classified service. First, State Personnel Board Rule 15.3(A) (_____) states: "Program transfer includes the movement of a person from a position outside the classified service to a position in the classified service by legislative action or executive order. A probationary period of twelve months of continuous employment is required unless otherwise provided by law." Additionally, State Personnel Board Rule 14.5(6) (_____) provides that former employees who have been unable to work due to a compensable injury under Workers' Compensation Act must

complete a probationary period unless they were in career status at the time of separation. Finally, former classified employees who leave the employment of the state and are later reemployed in classified service must serve another twelve-month probationary period, unless they left to enter a branch of the armed services. *See* State Personnel Board Rule 14.4(C), (E). Because Worker claims there is no board rule explicitly addressing her situation, she asserts that it must be assumed that, under the State Personnel Rules, she would be deemed to have already completed the probationary term and achieved career status.

{15} Although Worker's situation could have been addressed more explicitly, we believe the State Personnel Rules, as written, support the Board's determination that Worker was a probationer when she reentered the classified service. State Personnel Rule 14.4(E) requires "former employees" who are reemployed to serve a twelve-month probationary period. Worker argues that Section 14.4(E) applies only to employees who have actually left employment with the state. She also points out that State Personnel Rule 14.4 refers only to "former employees," and argues that transfers from classified service to an exempt position are not referred to as "former employees" under the State Personnel Rules. However, State Personnel Board Rule 1.14 (Feb. 26, 1994) defines "employee" as "a person in a position in the classified service." Under this definition, when serving in the exempt position, Worker was not considered an "employee," as that term is defined in the Act and used in the State Personnel Rules. Consequently, under this interpretation, Worker would have been considered a "former employee" when reentering the classified service. It follows that State Personnel Rule 14.4(E), which requires "former employees" who are reemployed in the classified service to serve a twelve-month probationary period, would apply to Worker.

{16} Additionally, Section 10–9–3(I) defines "employee" as "a person in a position in the service *who has completed his probationary period.*" (Emphasis added.) State Personnel Rule 1.14, which abbreviates the definition of employee as a "a person in a po-

sition in the classified service," notes that, although this definition differs from the statutory one, it "in no way confers a greater right on certain persons than contemplated by Section 10–9–3(I)." As a result, upon reentering the classified service, Worker was not considered an "employee," and therefore did not have the right of appeal under Section 10–9–18(A), which only confers that right to "any employee."

### C. Case Law Does Not Support Worker's Asserted Property Interest in Continued Employment

{17} The district court specifically relied on *Lovato* to conclude that, as a matter of law, Worker had a constitutionally protected property interest in her continued employment with the Department. In *Lovato*, the employee served as a "classified city employee," in various positions, for twenty-seven years. *See Lovato*, 106 N.M. at 288, 742 P.2d at 500. As a classified employee, he was permanently employed and was entitled to certain rights, including recourse to the grievance procedure. *See id.* He had been on "assignment status" since 1973, "a position that applies only to classified employees who are placed in supervisory positions by an administrative head of a department, agency or special program." *Id.* As a result of the assignment, he was given a five percent salary increase. *See id.* The employee remained on assignment status for thirteen years until he was removed from that position and reassigned with a corresponding five percent reduction in pay. *See id.* He filed a grievance with the personnel board and requested a hearing before the board, both of which were denied. *See id.* The city's personnel rules specifically exempted from the grievance provisions a person removed from assignment status and reassigned to another position. *See id.*

{18} The employee then filed a petition for mandamus in the district court, requesting that the city be ordered to grant him a hearing before the personnel board on the merits of his reassignment and pay reduction. *See id.* The writ was issued, and before a hearing was held, the city granted the employee a hearing on the limited issue

of grievability. *See id.* The district court "concluded that the City's denial of a full hearing on [the employee's] claims resulted in a denial of his right to due process of law." *Id.* at 289, 742 P.2d at 501. On appeal, our Supreme Court agreed with the district court's determination that, as a matter of law, the employee had a property right in continued employment in his assignment position, and for that reason, his reassignment was appealable. *See id.* at 289–90, 742 P.2d at 501–02. In so holding, the Court observed that the Constitution does not create property interests, but rather " 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source.' " *Id.* at 290, 742 P.2d at 502 (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The Court consequently determined that "[t]he sufficiency of any claim of entitlement must be decided by reference to the independent source of rules or understandings that secure the benefit." *Id.* The Court stated that the independent source of rules or understandings arose from the employee's retention in the assignment position for thirteen years and the merit system and personnel rules that applied to permanent positions. *See id.* Despite these sources providing that assignment positions were " 'not permanent advancements in the classification plan,' that classified 'employees assigned to these positions may be reassigned at any time at the discretion of their respective administrative head,' and that 'reassignment is not the subject of a grievance,' " the Court concluded that the "district court correctly found that, after a thirteen year employment in [the] assignment position, [the employee's] employment at the position, grade, and pay rate prior to transfer could not be considered a temporary, discretionary advancement within the meaning of the merit system and personnel rules." *Id.* (quoting Albuquerque, N.M., Merit System Ordinance § 2–9–7, Revised Ordinances 1974 (1980 ed.)); *see also* Personnel Rules and Regulations §§ 451–52.

{19} The facts in this appeal, however, are distinguishable, and, applying *Lovato,* we reach a different conclusion. *Lovato,* 106 N.M. at 290, 742 P.2d at 502, provides that the entitlement to a constitutionally protected property interest is contingent upon the independent source of rules or understandings securing the benefit. We have already determined that there is no support in either the Act or the State Personnel Rules for Worker's asserted property interest in her continued employment. There also does not appear to be any other independent source of understanding securing the benefit. In *Lovato,* our Supreme Court relied on the city's retention of the employee in the assignment position for thirteen years for its determination that he had a constitutionally protected property interest in continued employment in the same position he held for thirteen years. *Id.* After holding that position for thirteen years, the employee had expectations of continued employment in the same position and at the same pay rate.

{20} In contrast, after reentering the classified service, Worker in this appeal held the Manager V position for only two or three months before she was dismissed. Worker thus cannot be said to have secured the same expectation of continued employment in the Manager V position as did the employee in *Lovato.* Additionally, despite her prior fourteen-year period of employment in a classified position and total of seventeen years of working for the Department, Worker did not retain the rights and benefits of a classified employee, but voluntarily relinquished those rights when she resigned from her classified position and accepted an exempt position.

{21} *Lovato* is also distinguishable by the nature of the assignment in that case. While serving in a classified position, the employee was placed in the assignment position by an administrative head or a department, agency or special program. *See id.* at 288, 742 P.2d at 500 (stating that assignment status is "a position that applies only to classified employees who are placed in supervisory positions by an administrative head of a department, agency or special program."). Here, however, Worker voluntarily chose to leave her employment in a classified position to accept an exempt position. Both the Act and the State Personnel Rules apprised her that, by resigning from the classified service to accept an exempt position, she was relin-

quishing the rights associated with a classified position. We are likewise not persuaded that Worker had the same expectation of continued employment, as did the employee in *Lovato,* merely because of her prior years of experience. The critical difference in this case, we believe, is that Worker voluntarily resigned from her classified position and, in doing so, lost all the rights and benefits associated with that position. In resigning from the classified service to accept the exempt position, the State Personnel Rules made no provision for Worker's retention of the rights and benefits of a classified employee. Although serving as director of the Social Services Division, Worker was, by statute, exempt from the Act altogether. *See* § 9–2A–10. We hold that by reentering the classified service, Worker was the equivalent of a "former employee" under the State Personnel Rules and as such, was required to undergo a probationary period.

{22} Worker also argues that the Board's determination (that she was on probation and therefore not entitled to an appeal) constituted a disregard of (1) the legislative mandate that the Board implement a state government personnel system based on merit, and (2) the legislatively intended spirit of the Act and State Personnel Rules. We disagree. This Court has recognized that, to achieve the purposes of the Act, "provisions providing for the right of an administrative hearing and judicial review should not be narrowly interpreted so as to restrict such review." *Montoya v. Department of Fin. & Admin.,* 98 N.M. 408, 413, 649 P.2d 476, 481 (Ct.App. 1982). There is no provision, however, giving Worker a right to appeal. Rather, under the State Personnel Rules, Worker was properly classified as a probationer when she reentered the classified service, and the State Personnel Rules expressly prohibit probationers from appealing their dismissal. *See* State Personnel Board Rule 3.1(B)(4).

{23} Worker next asserts that the Board was charged with promulgating rules based on demonstrated competence within state government employment. She emphasizes the Board's function to promulgate rules and conduct hearings in furtherance of a merit system of personnel administration. These requirements, she contends, support her argument that she demonstrated her fitness and competence for a period of eighteen years, and she should not have been required to undergo a second probationary period after reentering the classified service. There is nothing in the provisions of the Act, however, nor in the stated purpose of the State Personnel Rules, that conflicts with the Board's decision. *See* NMSA 1978, § 10–9–2 (1963); NMSA 1978, § 10–9–13.1 (1983); Purpose, State Personnel Board vii (Jan. 2, 1993). Despite consideration of Worker's years of employment with the Department, there is no support in the Act, the State Personnel Rules or case law to conclude that Worker had a constitutionally protected property interest in continued employment.

■ {24} Worker lastly argues that requiring her to complete another probationary period after an eighteen-year period of employment with the State is contrary to the Act's purpose of encouraging "residents to remain in the state rather than moving out of state because of unsatisfactory employment opportunities in New Mexico." Section 10–9–13.1. Worker analogizes her circumstance to the situation where an employee resigns from his or her old employment and relocates in order to accept an offer of employment at will. She contends that many courts have determined that an implied contract arises out of the promise of job security and the relocation to accept that job. *See* Manesh K. Rath, *How Relocation Affects the Employment at Will Relationship,* 12 Lab. Law. 207, 209 (1996). We believe this approach is similar to the rationale in *Lovato,* where our Supreme Court concluded that an employee's understanding of his or her job security, because of rules or promises constituting an implied contract, often may give rise to a constitutionally protected property interest in continued employment. As we have already determined, there is not a statute, rule or other circumstance giving rise to an understanding that Worker had a property interest in her continued employment. We therefore reject her implied contract argument.

{25} We note that we have given no weight to the document signed by Worker

acknowledging her probationary status when she reentered the classified service. If she had been made to sign a document that was contrary to the State Personnel Rules or case law, her written acknowledgment would have no effect. Similarly, the fact that she signed the document acknowledging her probationary status is not a factor we have considered. In the factual context of this appeal, that document did not operate as a waiver. Nor is the general memorandum notifying employees of their relinquishment of all the rights and benefits of classified service by accepting an exempt position a consideration in our decision. Instead, we determine that the Act and the State Personnel Rules sufficiently apprised Worker of this relinquishment.

## III. CONCLUSION

{26}    The State Personnel Rules expressly prohibit a probationer from appealing their dismissal. The issue in this appeal is whether Worker was properly characterized as a probationer when she reentered the classified service. Although the State Personnel Rules do not specifically address the factual circumstances of Worker, we interpret them as requiring an employee resigning from classified service to accept an exempt position, and then reentering classified service, to serve a twelve-month probationary period upon such reentry. We also hold that Worker has failed to show she was deprived of a constitutionally protected property interest under *Lovato*.

{27}    In summary, having reviewed the whole record in this appeal, we conclude that the Board's decision "was not arbitrary and capricious, was supported by substantial evidence, and was within the scope of the administrative body's authority." *Anaya*, 107 N.M. at 625, 762 P.2d at 912. Based on the Act, the State Personnel Rules, and the case law, we also conclude that the Board's decision was in accordance with the law. We therefore reverse the district court's judgment and affirm the Board's final order. The parties shall pay their respective costs on appeal.

{28}    **IT IS SO ORDERED.**

ALARID and BOSSON, JJ., concur.