**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2019-NMCA-041**

**Filing Date: May 14, 2019**

**No. A-1-CA-36344**

**AMY LANDAU, JOYCE RODARTE n/k/a JOYCE SOLISZ, LAWRENCE OTERO, NICOLE BEDER, JEFFREY R. BURKE, PAULA E. GANZ, JAMES GRAYSON, YOLANDA J. HERRERA, ANTHONY MANFREDI, SHANNON MURDOCK, FEMMA M. OLVERA-SCOTT, MELINDA PATE, MARY H. SMITH, JESSICA L. SIERRA, GREGORY D. STOVER, HAMISH THOMSON, MICHAEL P. VALDEZ, MICHAEL SANCHEZ, and MARIA SANCHEZ-GAGNE,**

   Appellants-Appellants,

**v.**

**NEW MEXICO ATTORNEY GENERAL OFFICE,**

   Appellee-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Jennifer L. Attrep, District Judge**

Certiorari Denied, August 6, 2019, No. S-1-SC-37730.  Released for Publication September 3, 2019,

Amy Landau
Albuquerque, NM

Pro Se Appellant

Joyce Solisz
f/k/a Joyce Rodarte
Castle Rock, CO

Pro Se Appellant

Lawrence Otero
Santa Fe, NM

Pro Se Appellant

Nicole Beder
Santa Fe, NM

Pro Se Appellant

Jeffrey R. Burke
Cedar Crest, NM

Pro Se Appellant

Paula E. Ganz
Santa Fe, NM

Pro Se Appellant

James Grayson
Santa Fe, NM

Pro Se Appellant

Yolanda J. Herrera
Albuquerque, NM

Pro Se Appellant

Anthony Manfredi
Albuquerque, NM

Pro Se Appellant

Shannon Murdock
Moriarty, NM

Pro Se Appellant

Femma M. Olvera-Scott
Albuquerque, NM

Pro Se Appellant

Melinda Pate
Austin, TX

Pro Se Appellant

Mary H. Smith
Albuquerque, NM

Pro Se Appellant

Jessica L. Sierra
Albuquerque, NM

Pro Se Appellant

Gregory D. Stover
Corrales, NM

Pro Se Appellant

Hamish Thomson
Santa Fe, NM

Pro Se Appellant

Michael P. Valdez
Albuquerque, NM

Pro Se Appellant

Michael Sanchez
Farmington, NM

Pro Se Appellant

Maria Sanchez-Gagne
Santa Fe, NM

Pro Se Appellant

Hinkle Shanor LLP
Ellen S. Casey
Jaclyn M. McLean
Jaime R. Kennedy
Santa Fe, NM

for Appellee

## OPINION

**CHÁVEZ, Judge Pro Tempore.**

**{1}** Hector Balderas was elected Attorney General in 2014 to begin his term on January 1, 2015. Attorney General Balderas's transition team terminated Appellants, who had been employees within the Office of the Attorney General (OAG), in most cases for several years, before Balderas took office. Appellants appealed to the State Personnel Board (the Board). The Board concluded it did not have subject matter jurisdiction to hear Appellants' appeal because OAG employees are not entitled to the protections of the Personnel Act, NMSA 1978, Sections 10-9-1 to -25 (1961, as amended through 2014). Those protections include the right to dismissal only for just cause, as well as the right to appeal a dismissal. *Selmeczki v. N.M. Dep't. of Corr.*, 2006-NMCA-024, ¶ 15, 139 N.M. 122, 129 P.3d 158 ("Employees subject to the Personnel Act who have completed a probationary period may only be disciplined for just cause."); § 10-9-18(A) (providing for an appeal); § 10-9-18(F) (providing for reinstatement if dismissal was not for just cause); 1.7.11.10(A) NMAC (stating that "just cause" is "any behavior relating to the employee's work that is inconsistent with the employee's obligation to the agency").

**{2}** The central issue in this case is whether Appellants were "classified" employees covered by the Personnel Act or "exempt" employees not entitled to the procedural protections of the Personnel Act. Attorney General Balderas contends that all employees of the OAG are exempt because they all serve at the pleasure of the attorney general under NMSA 1978, Section 8-5-5 (1988) and therefore may be terminated with or without cause. Appellants contend that Section 10-9-4 of the Personnel Act, as amended in 1963, made all employees of the OAG, with a few exceptions not relevant to them, classified employees who could not be demoted or discharged without the procedural protections of the Act.

**{3}** We conclude that the Personnel Act controls over Section 8-5-5 because the history of the Personnel Act demonstrates that the Legislature intended it to be a comprehensive revision of the law regarding state employment. As a result, Appellants are classified employees unless the Board finds that their positions satisfy an enumerated exception in Section 10-9-4(A)-(O). We reverse the Board[1] and remand for a hearing consistent with this opinion.

**DISCUSSION**

**I.      The Personnel Act Supersedes Section 8-5-5 Because it Covers the Entire Subject Regarding State Personnel, Defines Which State Employees Are**

---

[1]Appellants appealed from the Board's decision to the First Judicial District Court, pursuant to Section 10-9-18(G) ("A party aggrieved by the decision of the board made pursuant to this section may appeal the decision to the district court pursuant to the provisions of [NMSA 1978,] Section 39-3-1.1 [(1999)].") and Rule 1-074(A) NMRA (governing "appeals from administrative agencies to the district courts when there is a statutory right of review to the district court"). Without deciding the merits, the district court certified the appeals to this Court on the ground that they "address an issue of substantial importance because they implicate the New Mexico Attorney General's authority to hire and fire at will, which affects not only [Appellants], but also all current and future employees of the NM[OAG]." *See* Rule 1-074(S) ("[T]he district court may, as a matter of judicial discretion, certify to the Court of Appeals a final decision appealed to the district court, but undecided by that court, if the appeal involves an issue of substantial public interest that should be decided by the Court of Appeals.").

**Classified or Exempt, and Creates a New and Comprehensive Procedure for the Discharge or Demotion of Classified Employees**

{4}     The question before us is a legal question that we review de novo. *See Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶¶ 16, 17, 133 N.M. 97, 61 P.3d 806. The Legislature anticipated the possibility that it might enact competing statutes and therefore adopted legislation to explain how irreconcilable statutes are to be interpreted. NMSA 1978, § 12-2A-10 (1997). The most relevant provision is Section 12-2A-10(C), which provides: "[i]f a statute is a comprehensive revision of the law on *a subject*, it prevails over previous statutes on the subject, whether or not the revision and the previous statute*s* conflict irreconcilably." (Emphasis added.) Section 12-2A-10(C) is consistent with case law holding that repeals by implication, while not favored, will be found where "the last statute is so broad in its terms and so clear and explicit in its words as to show it was intended to cover the whole subject, and therefore[,] to displace the prior statute." *State ex. rel. Bd. of Comm'rs v. Romero*, 1914-NMSC-023, ¶ 6, 19 N.M. 1, 140 P. 1069 (internal quotation marks and citation omitted); *see also Stokes v. N.M. State Bd. of Educ.*, 1951-NMSC-031, ¶ 5, 55 N.M. 213, 230 P.2d 243 (holding that a later act covering an entire subject and furnishing a new and comprehensive system of procedure evinces legislative intent to supersede prior legislation relating to the same subject, even if inconsistent).

{5}     Section 8-5-5 was enacted before the Personnel Act. We must determine whether the Legislature intended the Personnel Act to be a comprehensive revision of state public employment law that governs whether OAG employees are classified or exempt. *State v. Natoni*, 2012-NMCA-062, ¶ 5, 282 P.3d 769 ("Our ultimate goal in statutory construction is to ascertain and give effect to the intent of the Legislature."). When construing statutes, courts generally turn first to the plain language of the statutes as the primary indicator of legislative intent. *See State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. Here, however, the plain language of the statutes at issue is contradictory, as we discuss further below. We therefore begin our analysis by describing the history of the enactment and amendments of both Section 8-5-5 and the Personnel Act. *See Davis*, 2003-NMSC-022, ¶ 6 ("The legislative history of the statute, including historical amendments, and whether it is part of a more comprehensive act, is instructive when searching for the spirit and reason the Legislature utilized in enacting the statute" (citation omitted).

## A.     History of Section 8-5-5.

{6}     In 1933, the Legislature created a Department of Justice, 1933 N.M. Laws, ch. 21, § 1, defined the duties, rights and powers of the Attorney General, *id.* §§ 2-4, and their assistants, *id.* § 5, and set the salaries for authorized assistants of the Attorney General, *id.* § 6. In 1955, the Legislature amended Section 5 and repealed Section 6. *See* Chapter 21; 1955 N.M. Laws, ch. 119, §§ 1, 2. The amendment of Section 5 cited as NMSA 1953, § 4-3-5 (1955) (current version at Section 8-5-5)—is at the heart of the dispute before us. This section in 1955 read:

> Assistant attorneys general—Appointment. The attorney general may appoint a first assistant attorney general, and as many other assistant attorneys general together with stenographic, clerical and other necessary employees on a full or part time basis, at salaries to be fixed by him within budget allowances and appropriation limits, as the business of the department shall require, and *who shall hold office during the pleasure of the attorney general*. The assistant attorneys general shall, subject to the direction of the attorney general, have the same power and authority as the attorney general.

(Emphasis added.) In 1965, the title of the first assistant attorney general was changed to deputy attorney general. 1965 N.M. Laws, ch. 214, § 1. In 1979, the Legislature amended Section 8-5-5 by adding Subsection B to authorize the attorney general to appoint "peace officers for the full-time investigation and enforcement of violations of the Controlled Substances Act." 1979 N.M. Laws, ch. 356, § 1. The last amendment of Section 8-5-5 occurred in 1988 when the Legislature enacted two changes. First, the Legislature amended Subsection B to expand the authority of OAG peace officers to investigate and enforce all of the criminal laws of the state, limited only by legislative appropriations. Second, and material to the issue before us, the Legislature made a stylistic change in Subsection A to the language "who shall hold office during the pleasure of the attorney general" by supplanting the word "during" with the word "at." *See* NMSA 1978, § 8-5-5 (1989) Legis. History N.M. Comp. Comm'n ("The 1988 amendment, effective May 18, 1988, made a minor stylistic change in Subsection A[.]")

## B.   History of the Personnel Act

**{7}**   The Personnel Act was first enacted in 1959, 1959 N.M. Laws, ch. 205, §§ 1-11, but was repealed and replaced in 1961 by a much more comprehensive Personnel Act, which was passed "to establish for New Mexico a system of personnel administration based solely on qualification and ability, which will provide greater economy and efficiency in the management of state affairs." 1961 N.M. Laws, ch. 240, § 2; *see* § 10-9-2. This was the first Personnel Act to create a one-year period of probation during which employees could be discharged or demoted without cause or the benefit of notice and a hearing. 1961 N.M. Laws, ch. 240, § 9(D). However, once employees served their one-year probationary period, employees covered by the Act could not be discharged or demoted without cause, notice, and a hearing. *Id.* § 9(G).

**{8}**   The 1961 Personnel Act also specified in greater detail which state positions—defined as "any state office, job, or position of employment," *id.* § 3(D)—would be covered under the Personnel Act. Section 4 of the 1961 Personnel Act specified that "*all* state positions except" those in twelve categories were covered by the Personnel Act. *Id.* § 4 (emphasis added). Subsections A and I are the exceptions relevant to the issue before us. Subsection A excepted "officials elected by popular vote or appointed to fill vacancies in elective offices, and, except for the governor, their employees, unless the elected officials elect to have their employees covered by the Personnel Act." *Id.* § 4(A). Thus, an elected official was automatically excluded from the Personnel Act, as were

his or her employees unless the elected official chose otherwise. An elected official who chose to have employees covered by the Personnel Act could exclude a maximum of two assistants from coverage. *Id.* § 4(I). The New Mexico Attorney General is an elected official and therefore exempt from the Personnel Act. N.M. Const. art. V, § 1. There is no evidence in the record that the Attorney General in 1961 exercised discretion to bring OAG employees under the Personnel Act.

{9}     The Legislature in 1961 also passed Senate Joint Resolution Number 1 proposing to amend Article VII, Section 2 of the New Mexico Constitution to "allow the [L]egislature to provide by law for the creation of a personnel system and for the establishment of necessary qualifications for employment of appointive officials and employees." S.J. Res. 1, 25th Leg. (1961). The voters adopted the proposed amendment at the special election held on September 19, 1961. N.M. const. art. VII, § 2(B) Ann. The amendment reads, "[t]he [L]egislature may provide by law for such qualifications and standards as may be necessary for holding an appointive position by any public officer or employee." N.M. Const. art. VII, § 2(B).

{10}     Armed with the approval of the voters, in 1963 the Legislature amended the Personnel Act to specify that the Personnel Act was enacted pursuant to Article VII, Section 2 and to broaden the scope of its application. 1963 N.M. Laws, ch. 200, § 1; NMSA 1953, § 5-4-29 (1963) (current version at Section 10-9-2). The Legislature broadened the Personnel Act's scope by amending Subsection 4(A) of the 1961 Personnel Act to delete the language that excluded employees of elected officials from coverage and to eliminate the discretion given to elected officials to bring their employees under coverage of the Personnel Act. 1963 N.M. Laws, ch. 200, § 2; NMSA 1953, § 5-4-31(A) (1963) (current version at Section 10-9-4). The 1963 amendment of Section 4(A) changed the language of that subsection as follows: "cover all state positions except: A. officials elected by popular vote or appointed to fill vacancies in elective offices, and, except for the governor, their employees, unless the elected officials elect to have their employees covered by the Personnel Act." *Id.* (deleted language from the 1961 Personnel Act added)

{11}     Elected officials remained excluded from the Personnel Act, NMSA 1953, § 5-4-31(A), and the 1963 Personnel Act still allowed up to two assistants in the office of an elected official to be excluded from coverage under the Personnel Act. NMSA 1953, § 5-4-31(I); *see* § 10-9-4(L). The 1963 Personnel Act also excluded from coverage "heads of divisions of agencies and such other employees serving in policy making capacities as may be determined by the personnel board." NMSA 1953, § 5-4-31(M); *see* § 10-9-4(O). In 1967, the Legislature added one secretary to the list of elected official employees who could be excluded from coverage. 1967 N.M. Laws, ch. 181, § 1; *see* § 10-9-4(L).

{12}     The Legislature has revised Section 10-9-4 nine more times since 1967 to add or remove groups of employees from coverage, or to redefine which employees are excluded. *See, e.g.*, 1969 N.M. Laws, ch. 126, § 1 (excluding disadvantaged youth); 1975 N.M. Laws, ch. 182, § 1 (excluding certified school instructors); 1977 N.M. Laws,

ch. 247, § 45 (excluding directors of department divisions); 1981 N.M. Laws, ch. 339, § 5 (excluding corrections and criminal rehabilitation employees); 1990 N.M. Laws, ch. 20, § 1 (removing corrections employees from list of those excluded from coverage).

**C.    The Personnel Act Supersedes Section 8-5-5.**

**{13}**    We conclude that the Legislature intended the Personnel Act to supersede Section 8-5-5 based on the enactment and amendment history of these statutes. The Legislature's intent in 1961 to supersede prior legislation addressing the status of state employees generally is evident from its stated purpose, which was to establish "for New Mexico a system of personnel administration based solely on qualification and ability, which will provide greater economy and efficiency in the management of state affairs." 1961 N.M. Laws, ch. 240, § 2. The Legislature's intent is also reflected in the fact that it sought and obtained constitutional authority to create a personnel system that would establish the qualifications for employment of state employees. S.J. Res. 1, 25th Leg. (1961) The Legislature empowered the Personnel Board to develop a comprehensive administrative procedure for classified public employees covered by the Personnel Act. 1961 N.M. Laws, ch. 240, § 9; *see Barreras v. N.M. Corr. Dep't*, 2003-NMCA-027, ¶ 12, 133 N.M. 313, 62 P.3d 770 (acknowledging the Personnel Board's comprehensive administrative scheme); § 10-9-13 (providing that the Personnel Board shall promulgate rules for a classification plan, a pay plan, and procedures for dismissal and demotion, including notice and appeal procedures, for all positions unless exempted by Section 10-9-4 of the Personnel Act).

**{14}**    The plain language of Section 10-9-4, specifically provides that the Act applies to "all state positions" except those falling within specific categories. The amendments to the Personnel Act from 1963 to 1990 excluding certain employees from the Act's coverage evinces legislative intent for all state employees to be covered by the Act unless they are specifically excluded from coverage by provisions in the Act itself.

**{15}**    Moreover, the Legislature did not alter the Personnel Act in response to its interpretation by the attorney general in office at the time. Former Attorney General Earl E. Hartley issued official opinions in 1961 and 1963 addressing which employees were exempt from the Personnel Act. In 1961, the Director of Personnel asked Attorney General Hartley for an opinion identifying which public entities were covered by the 1961 Personnel Act. Attorney General Hartley opined that the Attorney General and his employees were exempt from the 1961 Personnel Act unless he chose to have his employees covered by the Act. N.M. Att'y Gen. Op. 61-28 (1961). Two years later, after the 1963 amendments to the Act, the Director of Personnel sought another opinion as to which public bodies, formerly exempt under the 1961 Personnel Act, would be subject to the 1963 Personnel Act. N.M. Att'y Gen. Op. 63-27 (1963). In an opinion authored by Thomas A. Donnelly, later a judge on this Court, Attorney General Hartley opined that the Attorney General's employees were no longer exempt from the coverage of the Personnel Act. *Id.*

**{16}** The fact that the Legislature did not amend the Personnel Act to specifically exclude OAG employees from coverage after Attorney General Hartley's official opinion, which was in temporal proximity to the 1963 amendment to the Personnel Act, is additional compelling evidence that the Legislature intended to supersede Section 8-5-5 and to cover OAG employees under the Act. *See State ex. rel. State Eng'r v. Lewis*, 1996-NMCA-019, ¶ 13, 121 N.M. 323, 910 P.2d 957 ("An early interpretation and uniform administration of a statute by executive officers will not be lightly overturned."); *see also Five Corners Family Farmers v. State*, 268 P.3d 892, 899 (Wash. 2011) (En Banc) (failure to amend a statute in response to an attorney general's opinion interpreting legislation in temporal proximity to the enactment may constitute legislative acquiescence in the interpretation).

**{17}** Importantly, the 1963 Personnel Act provided that employees of an elected official who had been exempt because the official did not opt to bring them under the 1961 Personnel Act were automatically covered by the 1963 Personnel Act if the employee had served the elected official for at least one year. NMSA 1953, § 5-4-38. Any employee who had not served for at least one year would have to complete a year and pass a qualifying test before they could benefit from the protections of the Act. *Id*. The automatic coverage of employees who had served out a probationary period further reveals the Legislature's intent to apply the Personnel Act to all employees unless they fall within specified categories.

**{18}** Finally, a 1987 amendment to the Personnel Act to specifically except certain OAG employees from coverage also persuades us that the Legislature intended the Personnel Act to supersede Section 8-5-5. Beginning in 1984, employees in the OAG were assigned to the Rocky Mountain Information Network, which was "a federally funded regional information sharing systems program for law enforcement agencies." Hal Stratton, *Office of the Attorney General, State of New Mexico: History, Powers & Responsibilities, 1846-1990*, at 108 (1990). In 1987, the Legislature enacted Section 10-9-4.1 to address whether those employees were covered by the Personnel Act. In Subsection A, the Legislature stated, "[n]otwithstanding the provisions of Section 10-9-4 . . . , all employees of the [R]ocky [M]ountain [I]nformation [N]etwork who commence employment on or after the effective date of this act are exempt from coverage under the Personnel Act." This language would not have been necessary if, as argued by Attorney General Balderas, all employees of the OAG were exempt from coverage under the Personnel Act. As if to make clear that OAG employees are classified under the Personnel Act, the Legislature in Section 10-9-14.1(B) allowed OAG employees who were assigned to the Rocky Mountain Information Network before passage of Section 10-9-4.1 to elect to become *exempt* from coverage under the Personnel Act. The language authorizing these employees to elect to become exempt from coverage would be superfluous if the Legislature had intended for OAG employees to be exempt in the first place. We refrain from reading statutes in a way that renders its provisions superfluous. *State v. Rivera*, 2004-NMSC-001, ¶ 18, 134 N.M. 768, 82 P.3d 939. Therefore, we must conclude that the option to become exempt employees was necessary because the Legislature intended for OAG employees to be classified under Section 10-9-4.

**II.    Since the 1963 Enactment of the Personnel Act, OAG Employees Have at Times Been Treated as Classified Employees**

**{19}**    The parties each seek to support their arguments by pointing to evidence that OAG employees have historically been treated as classified or exempt. For example, Appellants refer us to the Sunshine Portal, created pursuant to the Sunshine Portal Transparency Act, NMSA 1978, Section 10-16D-1 to -6 (2010, as amended through 2015). The Department of Information Technology updates the portal monthly with information it receives from agencies and the department of finance and administration. Section 10-16D-3(E), (F). The portal lists classified employees by state agency, position title, and salary but does not name the employees. Section 10-16D-3D(11). Exempt employees are named and are also listed by state agency, position title, and salary. Section 10-16D-3D(12). All OAG employees are currently listed as classified employees, except one: the Attorney General himself. *See* https://www.sunshineportalnm.com/ (last visited Apr. 29, 2019).

**{20}**    For his part, Attorney General Balderas points to evidence that he and other attorneys general have required employees to sign a statement acknowledging that they are exempt employees. It is not clear from the record when this practice began. However, because Attorney General Hartley in 1963 issued an official opinion concluding that the employees of the Attorney General were "no longer exempted from the coverage of the State Personnel Act," N.M. Att'y Gen. Op. 63-27 (1963), it is reasonable to assume that Attorney General Hartley followed his own legal interpretation of the Personnel Act and, therefore, treated OAG employees as classified employees covered by the Personnel Act until he left office in 1964. The record does not reflect how many OAG employees were classified or exempt between 1964 and 1984.

**{21}**    Attorney General Hal Stratton's book—often cited by Attorney General Balderas—provides some insight into how OAG employees were categorized from 1984 to 1990. Stratton, *supra*, at 62, 341. Figure 3 in Attorney General Stratton's book depicts the total number of OAG employees and the number that were exempt or classified from 1984 until 1990. Less than ten percent of the OAG employees were exempt from 1984 until 1987, when Attorney General Stratton took office. Stratton, *supra*, at 109.

**{22}**    Attorney General Stratton disagreed with Attorney General Hartley's opinion and believed that Section 8-5-5(A) made all OAG employees at-will. Stratton, *supra*, at 114. Yet even Attorney General Stratton did not treat all OAG staff as exempt employees. For example, Figure 3 shows that in 1987, there were approximately 137 OAG employees and only approximately 42 were exempt. When Attorney General Stratton left office in 1990 there were approximately 118 OAG employees, of which approximately 62 were exempt, and 56 were classified. Stratton, *supra*, at 109.

**{23}**    The persuasive power of the fact that some attorney generals may have treated their employees as exempt and/or required employees to sign an agreement stating they are exempt from the Personnel Act is virtually nil here. Such an agreement is not

enforceable given our conclusion that the Personnel Act applies to OAG employees. *See* 1978 NMSA, §§ 8-5-1 to -18 (1933, as amended through 2019); *Clark v. N.M. Children, Youth & Families Dep't*, 1999-NMCA-114, ¶ 25, 128 N.M. 18, 988 P.2d 888 (stating that "[i]f [the employee] had been made to sign a document that was contrary to the State Personnel Rules or case law, her written acknowledgment would have no effect"); *see also State v. Davidson*, 1929-NMSC-016, ¶ 9, 33 N.M. 664, 275 P. 373 (stating that the powers of the attorney general are defined and limited by statute). Moreover, as we observed above, Attorney General Hartley's opinion concluding that the Personnel Act covers OAG employees is more persuasive because (1) it was contemporaneous with the 1963 amendment of the Personnel Act, and (2) the Legislature, fresh from obtaining constitutional authority to create a personnel system and identify which state employees would be covered by the Personnel Act, did not respond to Attorney General Hartley's opinion by amending the Personnel Act to exclude the OAG from its application.

**{24}** Without question, the continued existence of the language in Section 8-5-5 that declares that OAG employees "hold office at the pleasure of the attorney general" complicates matters. Such language typically connotes "at will" employment, i.e., employment that may be terminated without cause or process as provided in the Personnel Act. *See Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶ 4, 115 N.M. 665, 668, 857 P.2d 776 ("An at-will employment relationship can be terminated by either party at any time for any reason or no reason, without liability."). When the Legislature made a minor stylistic change to Section 8-5-5(A) in 1988, it did not delete this language, a fact that might be construed to indicate that the Legislature intended Section 8-5-5 to remain viable despite the Personnel Act. However, when construing statutes, we presume that the Legislature is aware of the statutes and case law extant at the time. Hence, any amendments to Section 8-5-5 must be understood in light of the Personnel Act's comprehensive provisions. *Santa Fe Water Res. All., LLC v. D'Antonio*, 2016-NMCA-035, ¶ 29, 369 P.3d 12 (stating that "when the Legislature recompiles or amends a statute, it is presumed to be aware of other relevant statutes and court holdings at the time of the recompilation or amendment").

**{25}** The Personnel Act is a comprehensive statute that addresses state public employment; which employees are or are not covered by the Personnel Act; and the procedural protections available to those state employees covered by the Personnel Act. The Legislature has instructed courts that a comprehensive revision of the law on a subject prevails over previous statutes on the subject regardless of whether the statutes are irreconcilable. If the attorney general wants his employees to be exempt from the Personnel Act, he may pursue an amendment to the Personnel Act. *See, e.g.*, § 10-9-4(J). The only OAG employees exempt from the Act are those specifically excluded under Section 10-9-4(A)-(P).

## III.   Appellants Have the Burden of Establishing Sufficient Facts to Invoke the Subject Matter Jurisdiction of the Board

**{26}**   The Board has subject matter jurisdiction to hear an appeal by a state employee who files an appeal within thirty days of being dismissed. Section 10-9-10(B); § 10-9-18(A). After Appellants appealed their dismissals to the Board, Attorney General Balderas challenged the Board's subject matter jurisdiction, arguing that Appellants are not employees covered by the Personnel Act. Appellants contend that Attorney General Balderas has the burden of demonstrating a lack of subject matter jurisdiction because he challenged the Board's jurisdiction and cite *State v. Begay*, 1987-NMCA-025, ¶ 6, 105 N.M. 498, 734 P.2d 278 ("Demonstrating a lack of jurisdiction is [the] defendant's burden."). We disagree.

**{27}**   In this case, Appellants have the burden of proving that they were employees as defined by the Personnel Act, Section 10-9-3(I), and held positions covered by the Act.[2] Section 10-9-4; *see Lopez v. Career Serv. Review Bd.*, 834 P.2d 568, 573 (Utah Ct. App. 1992) (stating that a party who brings a case before a tribunal of limited jurisdiction must present sufficient facts to invoke the tribunal's jurisdiction). Here Appellants had to present sufficient facts that they held a state job that was not excluded under Section 10-9-4(A)-(O). They have satisfied their burden of proving that they were state employees. However, they also have the burden of establishing that they were not, at the time they were dismissed, a director of a department division excluded under Section 10-9-4(D); one of two assistants or one secretary designated by Attorney General Balderas or the Legislature as exempt under Section 10-9-4(L); or in a policy-making position as determined by the Board under Section 10-9-4(O). Hence, on remand, the Board must determine whether one or more of the Appellants fall within one of the relevant enumerated exceptions in Section 10-9-4, in which case they do not have the protections of the Personnel Act.

**CONCLUSION**

**{28}**   Appellants are covered under the Personnel Act unless the Board finds that they are excluded under Section 10-9-4(D), (L), or (O). The Board's dismissal for lack of subject matter jurisdiction is reversed and this matter is remanded for further proceedings consistent with this opinion.

**{29}   IT IS SO ORDERED.**

**EDWARD L. CHÁVEZ, Judge Pro Tempore**

**WE CONCUR:**

**MICHAEL D. BUSTAMANTE, Judge Pro Tempore**

**LINDA M. VANZI, Judge**

---

2The parties do not dispute that Appellants timely appealed their dismissals within thirty days.